# JOHN B. GARVEY *vs.* GEORGE W. WAYSON.

*Malicious prosecution—Evidence—Province of Court and Jury—*
*When Court not required, ex mero motu, to define Malice.*

In an action for a malicious prosecution, the plaintiff offered to prove that pursuant to the regular custom of the detective police department, his name was entered upon the detective police annals of the City of Baltimore, and open to the inspection and use of the police force, as tending to show the publicity of the charge made against him and the consequent injury to him. HELD:

That this was clearly not admissible evidence against the defendant unless there was some law requiring such a record to be kept, or unless the plaintiff was prepared to show by proof, that the defendant knew that the name of the plaintiff would be so entered as the consequence of the charge of theft brought against him.

A prayer which asks the Court to instruct the jury that malice "in its legal sense is any wrongful act done intentionally without *legal justification or excuse,*" is erroneous.

1st. Because malice is not *an act* but the *wrongful motive* that prompts the act.

2nd. Because what constitutes a legal justification or excuse, is matter of law to be determined by the Court, and no prayer should be granted which submits such a question to the jury.

Where a prayer groups together various facts and asks the Court to instruct the jury that they may consider said facts, if found by them, in determining whether or not the defendant was actuated by malice, and several of the facts so enumerated, even if found by the jury would not be evidence of malice, such prayer should be rejected.

In an action for a malicious prosecution upon a charge of theft, the voluntary attendance of the defendant upon the execution of the search warrant and his entrance into the plaintiff's house while the search was being made, is no evidence of malice on his part.

Where the Court has rejected a prayer defining malice because it was incorrect, it is not bound *ex mero motu* to give any definition of it.

APPEAL from the Circuit Court for Howard County.

This was an action brought by the appellant in the Court of Common Pleas against the appellee for maliciously charging the plaintiff with theft, and procuring a search warrant against him. The case was subsequently removed to the Circuit Court for Howard County, where it was tried. The defendant pleaded "not guilty."

*First Exception.*—During the trial the plaintiff offered to prove that pursuant to the regular and uniform custom of the detective police department, the name of the plaintiff was entered upon the detective police annals of said city, and open to the inspection and use of the police force, as tending to show the publicity of said charge and the consequent injury to the plaintiff, which evidence was objected to and the objection was sustained by the Court, (FULL BENCH,) the Court ruling that such evidence was not admissible unless there was some law requiring such record to be kept, or unless followed up by proof that the defendant knew that such would be the consequence of his making complaint. The plaintiff excepted.

*Second Exception.*—The evidence being all in, the plaintiff offered the four following prayers:

1. That if the jury find from the evidence, that the defendant, on or about Decr. 16, 1873, by application for the same, and by making the affidavit therein set forth, caused and procured to be issued the search warrant, a copy of which is in evidence, and that the said warrant was executed, and the plaintiff's dwelling-house was, under said warrant, searched by an officer, in the effort to find the articles or papers alleged by the defendant to have been stolen, and that none of said articles or papers were found therein, and that no further proceedings in this connection were had or obtained by the said defendant against the plaintiff; and if the jury shall further find that there were no circumstances connected with the loss of said papers alleged to be stolen, which would furnish a reason-

able ground in the mind of a cautious man to believe that the plaintiff was guilty of having stolen said papers, or of believing that said papers were concealed in the house of said plaintiff, then there was no probable cause for said prosecution.

2. That if the jury find there was no probable cause, as defined in his first prayer, then the plaintiff is entitled to recover, if they further find that the defendant was actuated by malice in procuring the said search warrant; and the jury are further instructed, that the term malice, as used in this instruction, does not necessarily involve the existence of any personal ill-will, spite or hatred, toward the plaintiff, but in its legal sense is any wrongful act done intentionally, without legal justification or excuse; and if the jury find there was no probable cause, they may infer the existence of malice from the absence of such probable cause, and so find it, unless such inference is rebutted by other evidence in the case.

3. That in addition to malice which may be inferred from the absence of probable cause, as explained in the second instruction, the jury in determining whether or not the defendant was actuated by malice, may consider the activity and zeal and determination of the defendant in prosecuting the plaintiff, and also his insisting upon having the search warrant issued, notwithstanding the advice of the magistrate that he had no reasonable ground to suspect the plaintiff of having stolen his papers, and notwithstanding the warning of the magistrate that the issuing of the search warrant would be a dangerous thing, and that he (the defendant) must take the responsibility should such warrant be issued, and also the failure of the defendant to procure and act under the advice of counsel learned in the law, notwithstanding the fact that he was expressly cautioned by the magistrate to procure said advice, and also the voluntary attendance of the defendant upon the execution of said search warrant, and his intrusion into the

domestic privacy of the plaintiff's house, while said search was being made, and also the admission on the part of the defendant, that the plaintiff could have had no object in purloining the papers in question unless it were to attain possession of the alleged receipted tax bill referred to; provided the jury find as facts the several matters and circumstances in this prayer severally enumerated, together with all the facts and circumstances testified to.

4. That if they find for the plaintiff they are at liberty to take into consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and injury he has sustained in consequence of the defendant's wrongful act, but may also award such exemplary or punitive damages, as they may think proper, as a punishment to the defendant for such wrongful act.

And the defendant offered the two following prayers:

1. That the plaintiff, in order to recover in this action must satisfy the jury by the evidence, that there was a want of probable cause as defined in the plaintiff's first prayer, on the part of the defendant in obtaining a search warrant against the plaintiff, and in the proceedings had thereunder.

2. That even if the jury should find from the evidence that there was a want of probable cause for obtaining a search warrant against the plaintiff, yet, if the jury shall further find from all the facts and circumstances in the case as given in evidence, that in obtaining the same and in the subsequent proceedings thereunder, the defendant acted not from malice, but under an honest belief that papers belonging to him were in the possession of the plaintiff, and were by the plaintiff withheld from the defendant, then the plaintiff is not entitled to recover.

The Court granted the first prayer of the plaintiff and of the defendant, and rejected all the others, and gave in lieu thereof its own instructions, as follows:

1. If the jury find there was no probable cause as defined in the plaintiff's first prayer, then they may infer, in the absence of sufficient proof to satisfy them to the contrary, that the defendant was actuated by malice in procuring the said search warrant; but while it is competent for the jury thus to infer malice from want of probable cause, yet the question whether the defendant was actuated by malice is one to be determined by the jury upon the whole evidence, and if upon the whole evidence and all the circumstances of the case as given in evidence, the jury believe the defendant did not act maliciously, then their verdict must be for the defendant.

2. If the jury find the facts stated in the plaintiff's first prayer and that the defendant was actuated by malice in procuring the search warrant and the proceedings thereunder as testified to by the witnesses, then the plaintiff is entitled to recover, and in estimating the damages the jury are at liberty to take in consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and injury he has sustained in consequence of the defendant's wrongful acts, but may also award such exemplary or punitive damages as they may think proper, as a punishment to the defendant for such wrongful acts.

And while giving its instruction to the jury, the Court stated verbally that it did not think it necessary to give any definition of malice, as it had no doubt the jury understood very well the meaning of that term. The plaintiff excepted, and the verdict and judgment being against him he appealed to this Court.

The cause was argued before Stewart, Brent, Grason and Robinson, J.

*W. Burns Trundle* and *Albert Ritchie,* for the appellant.

The testimony offered under the first exception was proper, as showing the increased publicity of the charge,

and thus bearing on the question of damages.    It was an ordinary and usual consequence of the appellee's act. *Munns vs. Dupont*, 1 *Am. Lead. Cas.*, 203.

The second exception was taken to the Court's refusal to grant the plaintiff's second and third prayers, and substituting for them its own instructions.    (The plaintiff's fourth prayer, on the measure of damages, also rejected, was sufficiently embraced in the Court's instruction.)

The Court's instructions do not define malice, do not inform the jury that malice in law may be inferred from want of probable cause, make no reference to such of the evidence as tended to show express malice, and are given to the jury with the verbal statement, that the Court " did not think it necessary to give any definition of malice, as it had no doubt the jury understood very well the meaning of that term."

It is evident that the term malice, in the legal sense, as used in connection with this class of cases, is very different from malice in the ordinary signification.    It is not necessary, in an action for malicious prosecution, to prove malice in the ordinary sense of the word.    Per TINDAL, Ch. J., in *Stockley vs. Hornidge*, 8 *Carr. & Payne*, 11.

Malice means any act wrongfully done, without reasonable, or probable cause, and not, as in common parlance an act dictated by angry feeling or vindictive motives. Per BEST, Ch. J., in *Jones vs. Nicholls*, 3 *Moore & Payne*, 16 ; *Bromage vs. Prosser*, 4 *Barn. & Cres.*, 255 ; *Commonwealth vs. York*, 9 *Metcalf*, 104, 105 ; *Wills vs. Noyes*, 12 *Pick.*, 324 ; 1 *Starkie on Slander*, 191, (*Wendell's Ed.*)

The term malice then, in this class of cases has a technical meaning, and such technical meaning being a matter of law, the plaintiff had a *right to demand* an instruction to the jury, explaining the meaning of that term.    *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 143 ; *Handy & Tull, vs. Johnson*, 5 *Md.*, 450 ; *State, use, &c. vs. Hammond's Exc.*, 6 *G. & J.*, 169 ; *Birney vs. The New York & Wash.*

*Tel. Co*, 18 *Md.*, 356; *Parkhurst, et al. vs. The Northern Central R. R.*, 19 *Md.*, 479.

Hence it follows, that the rejection of the plaintiff's second prayer, explaining to the jury the meaning of the term malice, upon the assumption by the Court that the jury very well understood its meaning, was error. See *Haddrick vs. Heslop & Raine*, 12 *Adol. & Ellis*, (*N. S.*,) 268, and 12 *Jurist*, 602; *Commonwealth vs. Bonner*, 9 *Metcalf*, 410; *Brooks vs. Warwick*, 2 *Starkie*, 393;

The second and third prayers of the plaintiff stated the law correctly, and should have been granted as asked. *Turner vs. Walker*, 3 *G. & J.*, 377; *Cecil vs. Clark*, 17 *Md.*, 508; *Boyd vs. Cross*, 35 *Md.*, 197; *Strauss vs. Young*, 36 *Md.*, 246; *Cooper vs. Utterback*, 37 *Md.*, 283; *Stansbury vs. Fogle*, 37 *Md.*, 370; *Wheeler vs. Nesbitt*, 24 *How.*, 544.

The Court's instructions, offered in substitution, do not state the law in full. On the point of malice, they simply instruct the jury that if the defendant did not act "maliciously," he was entitled to a verdict. The plaintiff was entitled to a definition of malice, and also to an instruction that malice might be inferred from want of probable cause. How else was the jury to comprehend legal malice, or know that in law, it was a subject of inference?

*Charles J. Bonaparte* and *Thomas Donaldson*, for the appellee.

The evidence offered under the first exception could only be relevant in regard to the amount of damages, and the verdict being for the defendant, the exception necessarily falls. But aside from this, the ruling was correct; for the defendant could only be responsible for injuries which he knew, or could reasonably expect, would be the consequence of his action; and of the alleged custom of the detective department, he had neither actual nor constructive knowledge. Even if in any case admissible, it could only be so where there had been a special averment in the

declaration. *Ellicott vs. Lamborne*, 2 *Md.*, 131 ; *McTavish vs. Carroll*, 13 *Md.*, 429 ; *Crain vs. Petrie*, 6 *Hill*, 523 ; *Cox vs. Burbridge*, 32 *or* 41 *L. J., C. P.*, 89 ; *Cooke vs. Waring*, 32 *or* 41 *L. J. Exch.*, 262.

The plaintiff's second exception was to the granting and rejection of prayers.

There is no exception to the granting of the defendant's first prayer, but to the rejection of the plaintiff's second, third and fourth prayers, and the substitution therefor of the Court's instructions.

The instructions of the Court, together with the first prayer of the plaintiff, which was granted, gave to the plaintiff all that he was entitled to in the case, and whatever in the plaintiff's second, third and fourth prayers, was not covered by the Court's instructions, was properly rejected.

The plaintiff's second prayer is inaccurate and confused in its terms, and could not fail to be misleading. It first speaks of the defendant being "*actuated* by malice," properly representing it as a feeling or condition of the mind ; immediately afterwards, describes it, "in its legal sense," as "any wrongful *act* done intentionally, without *legal* justification or excuse;" and ends by telling the jury, "they may infer the existence of malice from the absence of probable cause, and so find it, unless such inference is rebutted by other evidence in the case." Thus the existence of malice from want of probable cause is made a presumption of law in one sentence, and a presumption of fact in another ; and what is a "*legal justification*" for a "*wrongful act*," if such a thing could be, is improperly submitted to the decision of a jury. The presumption of malice from want of probable cause, as correctly laid down in the Court's instruction, is a presumption of fact, and the malice must be averred in the declaration. The jury may or may not make the inference. It is true that "malice does not necessarily involve the existence of any

personal ill-will, spite or hatred towards the plaintiff;" but it *does* involve *some* wrongful motive, and such as a jury of ordinary intelligence would understand as included in the term "malicious." See *Stevens vs. Midland Counties Railway Co.*, 10 *Exchq.*, 354 ; *Mitchell vs. Jenkins*, 5 *Barn. & Adol.*, 588 ; *Barron vs. Mason*, 31 *Verm.*, 203.

The Court's first instruction is in terms expressly sanctioned by the decided case, and it was not error that it contained no definition of the term "malice." There was no more reason for defining that than for defining other terms in the same instruction ; nor was the Court obliged to supply by other instructions any omission or defect of the plaintiff's prayers.

The remark made to counsel by the Court, and mentioned in the bill of exceptions, was no part of the instruction to the jury. It could not be properly excepted to, nor was it in fact excepted to, as the record shows. *Boyd vs. Cross,* 35 *Md.*, 197 ; *Stansbury vs. Fogle*, 37 *Md.*, 369 ; *Wyatt vs. White*, 5 *H. & N.*, 371.

The plaintiff's third prayer could not properly have been granted. Its effect would necessarily have been misleading. It was the duty of the jury to consider all the evidence bearing on the question of malice, and to instruct that they *may* consider certain selected facts, would be to give undue relative importance to those facts, and, practically, to invade the province of the jury. Some of the facts so selected were not such from which the inference of malice could properly be drawn, as—the warning, of the magistrate,—the attendance of the defendant on the execution of the search warrant, and his omission to procure professional legal advice. Moreover, there was no evidence in the record of a failure to procure such legal advice ; and instead of their being "activity, zeal, and determination in prosecuting the plaintiff," as stated in this prayer, it was proved that the defendant did not prosecute the plaintiff at all, but as soon as the search at the house was over,

apologized, and requested the officer not to let the matter get into the papers.

GRASON, J., delivered the opinion of the Court.

At the trial of this case in the Court below, the plaintiff took two exceptions, the first to the exclusion of evidence from the jury and the second to the refusal of the Court to grant his second, third and fourth prayers as well as to the instructions given by the Court in lieu of them, and of the second prayer of the defendant.

1st. The fact that, pursuant to the regular custom of the detective police department, the appellant's name was entered upon the detective police annals of the city and open to the inspection and use of the police force, as tending to show the publicity of the charge made against him and the consequent injury to him, was clearly not admissible evidence against the appellee, unless there was some law requiring such a record to be kept, or unless the appellant was prepared to show by proof that the appellee knew that the name of the appellant would be so entered as the consequence of the charge of theft being preferred against him. The acts of the detective force were certainly not admissible for the purpose of inflaming the damages against the appellee without further proving that there was some law, of which the appellee would be bound to take notice, requiring an entry on their books of the name of any party against whom a criminal charge might be preferred, or that it was their custom to make such entry and that the appellee had a knowledge of that fact. There was no error in the ruling in this exception.

The second prayer of the appellant was properly rejected because it defined malice to be, in its legal sense, any wrongful act done intentionally, without legal justification or excuse. Malice is not *an act*, but the *wrongful motive* that prompts the act. *Addison on Torts*, 592. What constitutes a legal justification or excuse is matter of law to be determined by the Court, and no prayer should be

granted which submits such a question to the jury. It is the province of the jury to find the facts, but the Court alone is to determine whether the facts so found furnish a legal justification or excuse.

The appellant's third prayer groups together various facts and asks the Court to instruct the jury that they may consider said facts, if found by them, in determining whether or not the defendant was actuated by malice.

Several of the facts so enumerated, even if found by the jury, would not be evidence of malice, as for instance the voluntary attendance of the defendant upon the execution of the search warrant and his entrance into the plaintiff's house while the search was being made. He not only had a perfect right to accompany the officer who made the search, but it was his duty to accompany him so as to identify his property if found. This prayer was also properly rejected.

It is conceded by the appellant's counsel that the instruction asked by his fourth prayer is fully covered by the Court's instruction.

We find no error in the instructions granted by the Court in lieu of the plaintiff's second, third and fourth prayers and of the defendant's second, taken in connection with the plaintiff's first prayer which was granted.

The principles of law, announced in them, have been so often adopted and sanctioned by this Court, that they can no longer be questioned. Indeed the counsel of the appellant concedes the correctness of the instructions as granted, but complains that the Court did not go further and define malice, which definition he thinks he had a *right to demand.*

The Court having rejected his prayer defining malice, because it was incorrect, it was not bound, *ex mero motu,* to give any definition of it.

Finding no error in the rulings of the Court below, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 12th March, 1875.)

STEWART, J., delivered the following dissenting opinion:

This was an action for malicious prosecution.

The testimony proposed by the appellant in the first exception, that his name was entered in the annals of the detective police department, according to its uniform custom, in consequence of the charge alleged against him by the appellee, was irrelevant and immaterial, not being within the issues and was properly rejected by the Circuit Court.

The appellant's second exception was to the refusal of his second, third and fourth prayers, and to the instructions of the Court.

The second prayer of the appellant sought to obtain from the Court, for the instruction of the jury, the meaning of the term malice, applicable to the case before them. Malice expressed or implied on the part of the appellee, was a necessary fact to be established or inferred, to sustain the suit of the appellant.

The *gravamen* of the complaint against the appellee, was that appellant had been subjected to a criminal prosecution, through his instigation, without probable cause and from malicious motives, on his part. The *onus* was upon the appellant to prove the requisite malice.

The existence of malice, or not, was a question for the jury, and the appellant was entitled to have its legal character, as applicable to the case, explained by the Court to them, when called on by a suitable prayer, so that they could comprehend the nature of the inquiry before them, and find their verdict accordingly, from the evidence. *Whiteford vs. Burckmyer*, 1 *Gill*, 143; *State vs. Hammond*, 6 *G. & J.*, 169; *Plater vs. Scott, ib.*, 116; *Parkhurst vs. N. C. R.*, 19 *Md.*, 479. Without such instruction, the jury would naturally attach to the term malice its ordinary meaning, and find their verdict accordingly.

It was material, therefore, that the jury should be instructed as to the nature of the defendant's malice, as involved in the issues before them.

In truth, any wrongful or unjustifiable act, done purposely by the appellee, without other evidence of ill-nature or ill-will, that injured the appellant, was *prima facie*, sufficient to establish the imputed malice in a proceeding of this description.

The want of apt phraseology in the prayer, if the prayer was substantially correct, was not a sufficient defect to vitiate it.

That the malice requisite to the support of this action did not, necessarily, involve the existence of personal ill-will, spite, or hatred on the part of appellee toward appellant was true, and expressive of the motives of appellee. Any wrongful motive, or other than that of simply instituting a prosecution for the purpose of bringing a person to justice, is a malicious motive on the part of the person who acts under its influence. *Addison on Torts*, 592. But the terms used in the prayer, that "in its legal sense it is any wrongful act done intentionally, without legal justification or excuse," was characteristic of conduct in connection with motive.

That malice might be inferred from such an act, was also true, but the language was not the best to be employed. Such want of precision could not, however, destroy the substance of the prayer. We think the prayer sufficiently indicated the nature of the malice applicable to the case, and that it ought to have been granted.

That malice sufficient to support this suit could be inferred from a wrongful act done by appellee, intentionally, without legal justification or excuse, is fully established. See *Turner vs. Walker*, 3 *G. & J.*, 377; *Cecil vs. Clark*, 17 *Md.*, 508; *Boyd vs. Cross*, 35 *Md.*, 197; *Strauss vs. Young*, 36 *Md.*, 246; *Cooper vs. Utterback*, 37 *Md.*, 283; *Stansbury vs. Fogle*, 37 *Md.*, 369.

The third prayer of the appellant undertook to enumerate certain of the facts in proof, as showing malice, some of which had no such pertinency.

All the evidence was to be considered by the jury, and we think it was quite proper, and more just for the Court to allow no such discrimination of facts; but leave to the jury to put their own estimate upon the facts, without interference from the Court.

There was no error in the rejection of the prayer.

The reference to certain facts in the case of *Turner vs. Walker*, 3 *G. & J.*, 387, in the opinion of the Court, is but a designation of the kind and extent of proof admissible in a case like this.

The appellant had the benefit of his fourth prayer in the instruction given by the Court, and has no cause of complaint.

The Court having rejected the second, third and fourth prayers of the appellant, and substituted its own instructions in lieu thereof, and of appellee's second prayer, we think it ought to have instructed the jury as we have stated, as to the legal significance of the term malice; and the jury should not have been left to determine for themselves, according to their own conceptions, what was to be understood upon such a material element of the case.

In other respects, the appellant could have no cause of complaint with the instructions of the Court.

Whilst the Court may reject prayers and substitute their own instructions upon the proposition presented by the parties, yet, under such circumstances, the law ought to be declared fully and accurately, and in terms certain, explicit and intelligible to the jury, upon the points raised by the counsel. *Snively & Keys vs. Fahnestock*, 18 *Md.*, 391; *Atwell vs. Miller*, 4 *Md.*, 19; *B. & O. R. vs. Resley*, 14 *Md.*, 443.