[L. A. No. 6552. In Bank.—February 7, 1922.]

PETER BURKE, Respondent, v. W. A. WATTS, Appellant.

[1] MALICIOUS PROSECUTION — ACTION FOR DAMAGES — WANT OF PROBABLE CAUSE—IMPLIED FINDING—EVIDENCE.—In an action for damages for malicious prosecution, where the evidence was ample to show that plaintiff claimed to be the owner of the property alleged to have been stolen and that defendant knew of the claim, it cannot be said that an implied finding of the jury that facts and circumstances surrounding the taking of the property were

not such as would constitute probable cause for the prosecution was not justified.

[2] ID.—HONEST TAKING OF GOODS—ABSENCE OF CRIME.—A person taking goods which he honestly believes are his own, under a claim of title, is not guilty of larceny, nor of embezzlement, if the property is openly and avowedly taken under a claim of title preferred in good faith.

[3] ID. — DEFENSE — ADVICE OF COUNSEL. — In such a case defendant could not rely upon the opinion of the district attorney to establish probable cause for the prosecution where the evidence shows that he did not inform the district attorney that plaintiff was claiming title to the property and it was not shown that the district attorney had learned of such a claim from any other source, as in such event there was not a full and fair recital of the facts upon which the district attorney based his advice.

[4] ID.—ACTING ON ADVICE—ABSENCE OF BELIEF IN GUILT.—In such a case the jury may have concluded that the defendant, even though proceeding in the prosecution on the district attorney's advice, did not himself believe plaintiff guilty of an offense in removing the property in question, in which event there would have been a want of probable cause, even though the advice of the district attorney were based on a full and fair recital of the facts.

[5] ID. — ESSENTIAL FACTS — MALICE — WANT OF PROBABLE CAUSE — BURDEN OF PROOF.—The two essential facts which must concur to support an action for malicious prosecution are want of probable cause and malice, and the burden of proving both is upon the plaintiff. Malice in fact is really the foundation of the action and is usually the pivotal point on which the action turns. It is always a fact directly in issue. Its existence may be inferred by the jury from want of probable cause for the prosecution, or other acts or declarations of the defendant expressing or indicating prejudice, ill will, or malicious motive in the matter of the prosecution. The want of probable cause does not raise a legal presumption of malice; the law presumes nothing on that issue any more than it does on any other issue of fact in a civil action. The jury may, however, if they find that there was no probable cause for the prosecution, infer malice therefrom, although malice is not a necessary inference to be deduced therefrom.

---

2. Larceny or embezzlement as affected by belief in right to property taken, note, 41 L. R. A. (N. S.) 549.

3. Advice of counsel as defense to action for malicious prosecution, notes, 1 Ann. Cas. 932; 11 Ann. Cas. 954; Ann. Cas. 1912D, 423; 18 L. R. A. (N. S.) 49; 39 L. R. A. (N. S.) 207.

5. "Malice" as element of malicious prosecution, note, 21 Ann. Cas. 756.

[6] ID.—EVIDENCE—BILLS OF SALE.—In such a case bills of sale to the property alleged to have been stolen, one of which was executed by the party claiming the property to plaintiff's grantor and another by the latter to plaintiff, were admissible to prove the latter's claim of title to the property, his good faith in asserting such claim, and, also, by other evidence of conversations between plaintiff and defendant concerning the bills of sale, to prove defendant's knowledge of such claim.

[7] ID.—ADMISSIBILITY OF NEWSPAPER ARTICLES.—In such a case newspaper articles giving accounts of the preliminary examinations of plaintiff on the prosecution are admissible to prove the damage caused by the prosecution where no objection was made at the trial that they were not plain, unvarnished, privileged reports of the proceedings of the court and the only objection was that they were incompetent, irrelevant, immaterial, and hearsay.

[8] ID.—ADMISSIBILITY OF PHOTOGRAPHS OF PLAINTIFF.—In such a case photographs of the plaintiff, taken by the authorities when he was removed to the county jail, were properly admitted in evidence for the purpose of showing the humiliation and consequent damage which he suffered, it appearing that in taking the photographs the sheriff acted within his rights and pursuant to law, and that the taking of them was one of the natural sequences of events which follow the arrest of a person on a felony charge.

[9] ID.—INSTRUCTIONS—PROBABLE CAUSE—CLAIM OF TITLE.—In such a case an instruction that, if defendant at the time of filing the charges against plaintiff knew that the latter was taking the property in good faith under a claim of title, defendant would not have probable cause for prosecuting him, did not cast upon the defendant the burden of making an investigation of the facts and of judicially determining plaintiff's guilt or innocence.

[10] ID. — MALICE — WANT OF PROBABLE CAUSE — PRESUMPTION — INSTRUCTIONS.—In such a case, while an instruction to the jury that "if you find from the evidence that the defendant, in good faith, communicated to the district attorney of this county all the material facts known to him, affecting the question of the guilt of the plaintiff, before a warrant was issued, and then acted upon the advice of the district attorney, the presumption of malice and want of probable cause is rebutted, and this action against him for malicious prosecution must fail," if considered alone by using the word "presumption," might tend to convey the impression that the burden of proving that defendant acted without malice and had probable cause for prosecuting plaintiff was on the defendant, it could not have been prejudicial to defendant where in preceding instructions the jury was repeatedly informed that in order to recover, it was necessary that plaintiff establish the fact that he was prosecuted maliciously and without probable cause, and it was further told what facts must be established by plaintiff in order to show want of probable cause.

APPEAL from a judgment of the Superior Court of San Diego County. S. M. Marsh, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. M. Gordon for Appellant.

Wright & McKee and A. Rosenthal for Respondent.

LAWLOR, J.—This is an appeal by the defendant from a judgment in favor of the plaintiff in an action for damages for malicious prosecution.

Appellant, W. A. Watts, owned the Virginia Apartments, in the city of San Diego, which he leased to one Mrs. Hannah F. Johnstone, who, on December 28, 1917, purchased the furnishings from the former lessees of the premises, Augusta Svedin and Olaf Svedin, her husband. On March 14, 1919, respondent, Peter Burke, an auctioneer, purchased the furnishings from Mrs. Johnstone, the consideration being certain lands in Canada which he owned, and the sum of five hundred dollars. Mrs. Johnstone also assigned to re spondent the lease of the apartment house, which terminated on April 30, 1919. Among the furnishings were eight Holmes disappearing beds, valued at about two hundred dollars, which it appears both appellant and respondent claimed—appellant as a part of the realty and respondent as a part of the furnishings conveyed to him by Mrs. Johnstone. On April 27, 1919, respondent conducted an auction sale of the furnishings on the premises and disposed of a portion thereof. The part remaining included the Holmes disappearing beds, which respondent, two days later, removed to a storage warehouse, in spite of appellant's claim of ownership and his declaration that he would prosecute respondent if the beds were taken from the building. The same day, upon discovering that the beds had been removed, appellant notified the police department that respondent had taken the beds away, and on the morning of April 30, 1919, while the latter was in the apartment house, appellant had him arrested. Appellant then went to the district attorney's office, and after discussing the matter with that official, swore to a complaint charging respondent with grand larceny. Respondent was then removed to the county

jail, where his photograph and finger-prints were taken. Later he was released on bail.

On May 7, 1919, a preliminary examination of the charge was had before a justice of the peace and the action was dismissed. Following this, appellant further consulted with the district attorney concerning the case, and on May 9, 1919, swore to another complaint charging respondent in two counts with grand larceny and felony embezzlement, respectively. There was a preliminary examination of these charges before another justice of the peace, and that action was also dismissed. On December 8, 1919, respondent brought this action, charging appellant with malicious prosecution. The case was tried by jury, and at the conclusion of the evidence appellant interposed a motion for nonsuit, which was denied. A verdict for one thousand dollars was rendered in favor of respondent and judgment was accordingly entered. Appellant interposed a motion for a new trial, which was denied, and this appeal was taken.

Appellant's position is thus stated: "We contend on the part of the defendant and appellant that the verdict in this case is unwarranted and is not supported by the evidence.

"First: It was not shown that the plaintiff was arrested without probable cause.

"Second: It was not shown that the defendant was actuated through malice in causing the arrest of the plaintiff."

Appellant insists that "probable cause is the existence of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor that the person charged was guilty of the crime for which he was prosecuted," that "the way and manner in which the plaintiff took the property of the defendant and the particular kind of property he took, is certainly sufficient to cause a reasonable man to believe that a crime was committed," and that "the undisputed evidence showed that the defendant made to the district attorney a full, fair, and complete statement of all the material circumstances surrounding the commission of the crime with which the plaintiff was charged, . . . and after hearing all the facts, he again advised this defendant to sign a second complaint for the arrest of the plaintiff." Appellant also contends that "there is no evidence in the case

that shows or tended to show that the defendant was actuated through malice when he caused the arrest of the plaintiff.''

On the other hand, respondent argues that ''one of the elements of probable cause is that the person making the charge has an honest belief that a crime has been committed and that the person accused is guilty of such crime. The question of whether the person making the charge, in this case the defendant, had such belief is one of fact for the jury,'' that ''if the jury finds that there was a want of probable cause in the institution of the prosecution of the plaintiff, then the jury may infer malice from such want of probable cause. Aside from this there was sufficient evidence to sustain the finding of the jury that the prosecution was malicious.'' It is further contended that the evidence was sufficient to sustain the implied finding of the jury that the prosecution was instituted without probable cause.

The law on the subject of malicious prosecution is well established. In *McKenna* v. *Heinlen,* 128 Cal. 97 [60 Pac. 668], an action to recover for malicious prosecution, the court said: ''It is well settled that before a plaintiff can recover in an action for malicious prosecution he must establish concurrently that the defendant proceeded in the action brought by him with malice and without probable cause. The question of malice is one for the jury exclusively, but the court must determine, as matter of law, whether the facts and circumstances as they appear, or are found to exist, constituted probable cause. . . . While it is true that malice may be inferred from want of probable cause, the latter can never be implied from malice.'' In *Potter* v. *Seale,* 8 Cal. 217, the court defined probable cause as ''a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.'' In *Harkrader* v. *Moore,* 44 Cal. 144, also an action for malicious prosecution, it was declared: ''The defense must be that *he did believe* and *had reasonable grounds to believe at the time* that the accusation he made was well founded.'' In *Dawson* v. *Schloss,* 93 Cal. 194, 202 [29 Pac. 31, 32], a similar case, the court, speaking of the defense that defendant relied on the advice of counsel, said: ''In order to avail himself of this defense, it devolved upon the defendant to prove that before receiving

the advice he had fairly and fully communicated to his counsel, or at least that his counsel knew, all the facts within defendant's knowledge tending to prove or to disprove probable cause for the prosecution; and also that at the time of commencing the prosecution the defendant believed the plaintiff to be guilty as charged." In *Vann* v. *McCreary,* 77 Cal. 434 [19 Pac. 826], a verdict for the plaintiff in an action for malicious prosecution was affirmed, the court saying: "It is contended that the verdict is not sustained by the evidence, in this, that the evidence shows that the defendant relied upon the advice of counsel. But in view of the testimony, the jury may well have concluded that the defendant did not believe that the plaintiff was guilty of the crime with which he was charged."

1. First, as to appellant's claim that the evidence is insufficient to show a want of probable cause. There is ample evidence to the effect that respondent claimed to be the owner of the beds he was alleged to have stolen, and that appellant knew of this claim. Respondent testified that before he purchased the beds he asked appellant if Mrs. Johnstone was really the owner of the furnishings, and that appellant replied: "She is the owner all right. There was a man by the name of Ainsworth . . . paid one thousand dollars cash, and had the bill of sale made out in her name direct, from a Mrs. Svedin to Mrs. Johnstone." A copy of that bill of sale was admitted in evidence, and one of its items was "8 disappearing wall beds." The bill of sale from Mrs. Johnstone to respondent was also admitted in evidence, and with reference to it respondent testified: "There is no itemized statement as to the separate articles in this exhibit 1; there is no mention of the word disappearing beds except that it is included in a general way 'and entire furniture and fixtures.' " Respondent further testified: "On the fifteenth day of April I saw and had a talk with Mr. Watts with reference to the disappearing beds. . . . He said, 'No,' that he had purchased the building and he believed that the beds were a part of the building. . . . I told him that Mrs. Johnstone's predecessor had conveyed the beds to her by way of a bill of sale; that if he had any legitimate claim to these beds his proper course would be to put a bill of replevin on the goods and establish his title in a court of law, otherwise I would dis-

pose of the beds in conjunction with other furniture. He said: 'All right, I suppose I will have to do that.'" Appellant testified: "Then he [respondent] brought up the question of the Holmes disappearing beds. He said something that led me to believe that he was the owner of the beds. I said to him: 'Mr. Burke, I will not discuss that matter at all.' I said: 'I have told you very clearly and very frankly that the beds belonged to me.'" Appellant admitted having testified at the first preliminary examination that respondent had previously claimed ownership of the beds under a bill of sale and that he intended to sell them. He further testified: "I did not tell Mr. Utley [the district attorney] that Mr. Burke was claiming this property as his own under a bill of sale. At this time I knew Mr. Burke had been talking about claiming the property and I told him that I would not discuss it as to the ownership because the ownership was with me."

[1] In view of this evidence it cannot be said that the implied finding of the jury, that the facts and circumstances surrounding respondent's taking of the beds were not such as would constitute probable cause for appellant's prosecution, was not justified. [2] A person taking goods which he honestly believes are his own, under a claim of title, is not guilty of larceny (*People* v. *Devine*, 95 Cal. 227 [30 Pac. 378]), nor of embezzlement if the property is openly and avowedly taken under a claim of title preferred in good faith (Pen. Code, sec. 511). As already shown, there is evidence that appellant knew respondent was claiming the beds as his own. In the presence of such knowledge it cannot be maintained that appellant, as a reasonable man, would have been warranted in believing respondent acted criminally in taking the beds, and consequently he would not have probable cause for instituting the prosecution. (*Harkrader* v. *Moore*, 44 Cal. 144.)

[3] Touching the defense that appellant proceeded, not on his own judgment, but on the advice of the district attorney, we have referred to the evidence that appellant did not inform the district attorney that respondent was claiming title to the beds, and it was not shown that the district attorney had learned of such claim from any other source. The jury would, therefore, be justified in finding that the statement given to the district attorney, upon which he based

his advice to appellant, in the first instance, did not consti-
tute a full and fair recital of the facts. Under such cir-
cumstances the opinion of the district attorney could not be
relied on to establish probable cause for the prosecution.
[4] In addition, as pointed out above, the jury may have
concluded that appellant, even though proceeding on the
district attorney's advice, did not himself believe respondent
guilty of an offense in removing the beds. If this were so,
there would have been a want of probable cause, even though
the advice of the district attorney were based on a full and
fair recital of the facts. (*Dawson* v. *Schloss*, 93 Cal. 194
[29 Pac. 31].)

[5] 2. We shall next consider appellant's contention that
it was not shown the prosecution was malicious. In *Runo* v.
*Williams*, 162 Cal. 444, 450 [122 Pac. 1082, 1085], it is
said: "The two essential facts which must concur to support
an action for malicious prosecution are want of probable
cause and malice, and the burden of proving both is upon
the plaintiff. Malice in fact is really the foundation of the
action and is usually the pivotal point upon which the action
turns. It is always a fact directly in issue. Its existence
may be inferred by the jury from want of probable cause
for the prosecution, or from acts or declarations of the de-
fendant expressing or indicating prejudice, ill will, or
malicious motive in the matter of the prosecution. The
want of probable cause does not raise a legal presumption
of malice; the law presumes nothing on that issue any more
than it does on any other issue of fact in a civil action.
The jury may, however, if they find that there was no prob-
able cause for the prosecution, infer malice therefrom, al-
though malice is not a necessary inference to be deduced
therefrom." It was held in *Moneyweight Scale Co.* v. *Mc-
Cormick*, 109 Md. 170 [72 Atl. 537], that "the malice which
is required to be shown is the wrongful motive that prompted
the prosecution, and may be established by proof of any
motive other than that of bringing a guilty party to jus-
tice." Aside from any inference which might be drawn
from a want of probable cause, there is ample evidence in
the case at bar from which the jury might have concluded
appellant was actuated by malice. Respondent testified that
the day before his arrest, and before he had removed the
beds, appellant said to him: " 'I will fix you; I fixed you

once, I will fix you again all right; I will fix you.'"; that at the time of the arrest appellant said to the officers: "'There he is; arrest him and take him down, lock him up, put him in jail, he is a crook; hold him there until I go down to the district attorney to get a warrant for grand larceny. I am going to send him to the penitentiary; he is a crook. Take him away.' And he turned to my face and said: 'I will fix you, I told you I would fix you, you . . . crook, I will fix you all the time.'" There is other evidence that before this conversation appellant showed anger toward respondent as a result of their dealings. From this testimony and evidence that appellant knew respondent actually claimed title to the beds the jury might have concluded that appellant was prompted by a malicious motive in causing the prosecution of respondent.

[6] 3. Appellant assigns error to the admission in evidence over his objection of the bills of sale of the furnishings from Mrs. Svedin to Mrs. Johnstone and from Mrs. Johnstone to respondent. The bills of sale were offered to prove respondent's claim of title to the beds, his good faith in asserting such claim, and also by other evidence of conversations between appellant and respondent concerning the bills of sale, to prove appellant's knowledge of such claim. Proof of the existence of the bills of sale, one of which specifically mentioned the beds, and of appellant's knowledge of the bills, tended to establish these facts, and therefore the bills themselves were admissible.

[7] 4. Error is also assigned to the admission in evidence of six newspaper articles which gave accounts of the two preliminary examinations. Appellant asserts there was no evidence introduced that tended to show that respondent is the party mentioned in the articles. It appears from the record that at the trial the only objections made to the admission of these articles were that they were incompetent, irrelevant, immaterial, and hearsay. It was not urged that no proper foundation was laid, and that objection cannot be raised for the first time on appeal. (*French* v. *Atlas Milling Co.*, 17 Cal. App. 226 [119 Pac. 203].) The articles were admitted for the sole purpose of proving the damage caused by the prosecution. In *Filer* v. *Smith,* 96 Mich. 347, 355 [35 Am. St. Rep. 603, 55 N. W. 999, 1002], the court said: "The fact of the publication in a newspaper of the fact of plaintiff's arrest was set up in the declara-

tion; and as tending to show the publicity given to that fact, and consequent injury, the publication should have been admitted. It was a plain, unvarnished account. Its publication was privileged. The general rule of law is that whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately brought about by intervening agents, provided such agents were set in motion by the primary wrongdoer, or provided those acts causing the damage were the necessary or legal and natural consequence of the wrongful act. The publication was such a natural, usual, and ordinary consequence of defendant's act that it must be deemed to have been contemplated.'' The articles in this case are in substance ordinary reports such as are usually made of justices' court proceedings, and no objection was made at the trial that they were not plain, unvarnished, privileged reports of the proceedings of the court. We cannot say that they are not true accounts of what actually happened upon the two hearings, notwithstanding they do not represent the justice of the peace as having conformed to the language of section 871 of the Penal Code in ordering the defendant discharged. The articles were the natural result of the prosecution, whether appellant directly inspired them or not, and their admission in evidence to show the damage suffered by respondent was not erroneous.

[8] Two photographs of respondent, taken by the authorities when he was removed to the county jail, were admitted in evidence over appellant's objection that they were incompetent, inadmissible, and irrelevant. They were introduced as tending to show the humiliation and consequent damage which respondent suffered. Appellant insists the taking of the photographs was an independent act of the sheriff, for which he was not responsible. Respondent contends that the sheriff in taking the photographs acted entirely within his rights and pursuant to law; that the taking of such photographs is one of the natural sequences of events which follow the arrest of a person upon a felony charge; that, therefore, appellant was responsible for the taking of the photographs, which act was one of the elements of damage naturally resulting from his arrest and prosecution. In *Garvey* v. *Wayson,* 42 Md. 178, an action

for malicious prosecution, the court said: ''The fact that, pursuant to the regular custom of the detective police department, the appellant's name was entered upon the detective police annals of the city and open to the inspection and use of the police force, as tending to show the publicity of the charge made against him and the consequent injury to him, was clearly not admissible evidence against the appellee, unless there was some law requiring such a record to be kept, or unless the appellant was prepared to show by proof that the appellee knew that the name of the appellant would be so entered as the consequence of the charge of theft being preferred against him. The acts of the detective force were certainly not admissible for the purpose of inflaming the damages against the appellee without further proving that there was some law, of which the appellee would be bound to take notice, requiring an entry on their books of the name of any party against whom a criminal charge might be preferred, or that it was their custom to make such entry and that the appellee had a knowledge of that fact.''

It is not necessary for us to decide whether, in the absence of a statute, the taking of such photographs as those objected to here is lawful, or whether the fact that such photographs would be taken must be brought to the attention of the party causing the arrest, for there is a statute in this state (Stats. 1917, p. 1391), of which appellant had presumptive knowledge, which provides: ''It is hereby made the duty of the sheriffs of the several counties of the State of California . . . to furnish to the said bureau [of criminal identification] daily copies of finger prints . . . and descriptions of all such persons arrested who, in the best judgment of such sheriffs . . . are persons wanted for serious crimes, . . . or of all such persons in whose possession at the time of arrest are found goods or property reasonably believed by such sheriffs . . . to have been stolen by them.'' Clearly, the photographs in question were taken as a part of respondent's description. Respondent, at the time of his arrest, had in his possession in the warehouse the eight beds, and we cannot say the sheriff could not reasonably have believed them to have been stolen by respondent. The sheriff was, therefore, justified under the statute in taking

188 Cal.—9

respondent's photograph, and such act became the lawful and natural result of respondent's arrest and prosecution. The photographs were sufficiently identified by James C. Byers, a witness, who had them in charge, and were properly admitted to show the indignities and consequent damage suffered by respondent as a result of the prosecution.

[9] 5. Appellant's next contention is that certain portions of the instructions were erroneous. The jury were instructed that if appellant at the time of filing the charges against respondent knew that respondent was taking the beds in good faith under a claim of title, then appellant would not have probable cause for prosecuting him. Appellant insists this instruction cast upon him the burden of making an investigation of the facts and of judicially determining respondent's guilt or innocence. We do not understand this to be the import of the instruction. The instruction has reference to knowledge already in the possession of appellant at the time he filed the charges, and it does not require that he have made any investigation to ascertain the validity of respondent's claims. As already pointed out, if appellant had such knowledge there would be a want of probable cause for the prosecution. The instruction correctly stated the law.

[10] The jury were further instructed that "if you find from the evidence that the defendant, in good faith, communicated to the district attorney of this county all the material facts known to him, affecting the question of the guilt of the plaintiff before a warrant was issued, and then acted upon the advice of the district attorney, the presumption of malice and want of probable cause is rebutted, and this action against him for malicious prosecution must fail." This instruction is objected to on the ground that it implies there is a presumption of malice which appellant must rebut. It is true that the instruction, if considered alone, by using the word "presumption," might tend to convey the impression that the burden of proving that appellant acted without malice and had probable cause for prosecuting respondent was on appellant. However, we do not think the use of the term could have prejudiced appellant, for in preceding instructions the jury was repeatedly informed that in order to recover, it was necessary that respondent establish the fact that he was prosecuted

maliciously and without probable cause. The jury was further told what facts must be established by respondent in order to show want of probable cause. From these instructions it is clear the jury must have understood that the burden of proof rested on respondent. The subject matter of the instruction complained of was in favor of appellant in that it conveyed the meaning that if he, in good faith, sought the advice of the district attorney, he had established a defense to respondent's allegations of malice and want of probable cause. We are of the opinion that the use of the word "presumption" did not detract from the soundness of the charge as a whole, and that it could not have misled the jury.

The judgment is affirmed.

Wilbur, J., Lennon, J., Shurtleff, J., and Shaw, C. J., concurred.