[No. 60.   Third Appellate District.—October 11, 1905.]

'A. F. COCHRAN, Respondent, v. W. H. BONES, Appellant.

MALICIOUS PROSECUTION—ARREST FOR PETIT LARCENY—FAULTY DE-
   SCRIPTION OF CRIME—MISTAKE IN NAME.—Where the defendant
   maliciously prosecuted and caused the arrest of the plaintiff for
   the alleged crime of petit larceny, without probable cause, and
   well knowing that no such crime had been committed, he cannot
   escape liability for damages for the malicious prosecution because
   of a faulty description in the complaint of the facts constituting
   the crime charged, nor because of a mistake in the name of the
   plaintiff whom he intended to prosecute for such crime.

ID.—ADVICE OF MAGISTRATE—CONCEALMENT OF FACTS.—The defendant
   cannot claim protection under the advice of the magistrate that
   the crime charged had been committed, where he concealed facts
   from the magistrate which, if disclosed, would have prevented the
   issuance of the warrant.

APPEAL from a judgment of the Superior Court of
Sonoma County.   Emmett Seawell, Judge.

The facts are stated in the opinion of the court.

J. M. Thompson, and J. A. Barham, for Appellant.

J. R. Leppo, for Respondent.

BUCKLES, J.—This is an action for malicious prosecu-
tion.   Plaintiff had judgment.   Defendant moved for a new
trial which was denied, and this appeal is from the judgment
and from the order denying the motion for a new trial.

Defendant went before the justice of the peace of Analy
Township in Sonoma County and swore to a complaint charg-
ing the plaintiff with petit larceny in stealing a hog, upon
which the justice issued his warrant and placed the same in
defendant's hands.   Defendant Bones and plaintiff Cochran
lived about a mile and a half from each other, and had so
lived for several years, but had only a speaking acquaintance,
and the defendant did not know plaintiff's name.   In April,
1902, one of defendant's hogs strayed upon the farm of plain-
tiff, who did not know to whom the hog belonged.   The said
hog was seen on plaintiff's place as often as once a week until

October of that year, when plaintiff shut his hogs up for the purpose of feeding them, and drove this stray hog away repeatedly, but it kept coming back and he finally found it in the pen with his hogs and did not remember whether he put it there or not, but had no intention of appropriating it to his own use, but let it remain with his hogs until some one should come for it. Defendant came for the hog on a day when plaintiff was absent, when plaintiff's wife requested defendant not to take it away until her husband should return, and defendant complied with her request. On the following day plaintiff went to defendant's home to see him about the hog, when the following conversation ensued between them:—

*Defendant.*—"You have one of my hogs in your pen?"

*Plaintiff.*—"Is that so?"

*Defendant.*—"Yes, sir; I was over there to get it yesterday."

*Plaintiff.*—"Wouldn't it have been better to have said something to me when you saw me on the road about that being your hog, if it is your hog, and it would look better to come to me like a man and say something to me before trying to take it away?"

*Defendant.*—"That is my hog and I am going to have it."

*Plaintiff.*—"I don't think that is a very manly way to get it."

*Defendant.*—"You have no right to have him shut up there."

*Plaintiff.*—"I think I have if the hog was doing me damage."

*Defendant.*—"You have not posted him and have no right to shut him up without posting him."

*Plaintiff.*—"Didn't you know the hog was there?"

*Defendant.*—"No, I didn't."

*Plaintiff.*—"Why didn't you come and get him?"

*Defendant.*—"I didn't have to." (Then defendant said something about plaintiff giving him eight dollars and keeping the hog, to which plaintiff said): "No, if you want to pay the damages against the hog you can have him, I don't want him."

Defendant then declared he would have the hog and would have plaintiff arrested for stealing. Defendant did not come after the hog again.

This conversation above referred to occurred prior to November 3, 1902, when defendant went to the justice's office and stated to the justice that one Schochran, of Green Valley, on the third day of November, 1902, at Green Valley, in the county of Sonoma, state of California, did "willfully and unlawfully take and keep one hog belonging to said W. H. Bones and refusing to give the said hog to said W. H. Bones when requested, the said hog having been kept in the possession of said Schochran since the middle of June, 1902, the same never having been advertised according to law."

The justice informed defendant that this was petit larceny, and made out the complaint in the words above, adding "And charges the said defendant with the crime of petit larceny." This was all defendant said to the justice, and did not tell him how the hog came to be in the possession of the plaintiff. The plaintiff was tried and acquitted on said charge, the said W. H. Bones not appearing at the trial. Whatever may be said as to the name of "Schochran" appearing in the complaint and warrant, all the facts point unmistakably to the one fact, that defendant Bones meant to charge the plaintiff A. F. Cochran with petit larceny in stealing a hog, was quite anxious to have A. F. Cochran arrested on said warrant, and took the warrant himself to the officer, and described to him A. F. Cochran and urged his arrest under the said warrant, which warrant, legal in every respect, failed only to designate the person intended by the correct name. The evidence shows that there was no person in that neighborhood by the name of "Schochran," no one being at the place designated as the residence of the man who had defendant's hog by the name of "Schochran," but that on the contrary the plaintiff A. F. Cochran did live there. The defendant intending, as is clearly shown, to charge A. F. Cochran with petit larceny and to cause the arrest of A. F. Cochran, cannot now shield himself by his mistake in failing to give the correct name. The case is malicious prosecution. The facts alleged in the complaint before the justice for all intents and purposes, so far as malicious prosecution requires, do charge petit larceny. "Did willfully and unlawfully take and keep one hog belonging to the said W. H. Bones," may not charge petit larceny as defined in the code. But the concluding part of the criminal complaint clearly makes the accusation of a

crime when it says "and charges said defendant with the
crime of petit larceny." But it is immaterial whether the
complaint before the justice charged the crime with all the
particularity required to make an absolutely faultless crim-
inal charge, for the defendant was a malicious prosecutor in
a criminal proceeding. He went before the justice of the
peace, who had the right and power to issue a warrant of
arrest for a person charged with a crime. He charged the
plaintiff with the crime of petit larceny and caused plain-
tiff's arrest without probable cause. And he cannot after-
wards be heard to say, "as the complaint does not sufficiently
describe the crime of petit larceny, I am not liable for the
damage done." In *Harrington* v. *Tibbett*, 143 Cal. 80, [76
Pac. 816], it is said: "When one maliciously, and without
probable cause, subjects another to a criminal prosecution,
the injury is the same whether it is instituted on a false state-
ment of facts or a false conclusion of law." And we add,
or on a faulty description of the offense. "If the reason for
the action lay solely in the danger of punishment in which
the man [prosecuted] is put, it might be otherwise. But the
action lies because of the disgraceful imputation put upon
him, the injury caused by his arrest, and the trouble and ex-
pense he is put to in defending himself." And this rule,
founded as it is on good sense and reason, we are sure is the
proper rule in such cases.

That the prosecution was without probable cause, fully ap-
pears; and that it was malicious there can be no doubt. As
has been seen, the parties had talked about the detention of
the hog in which plaintiff informed the defendant that the
hog had strayed onto his premises, did damage, and was de-
tained until damage done by said hog should be paid for.
Defendant knew he could get his hog by paying the damage
done, and instead of doing so had declared he would have
the hog and would have plaintiff arrested for stealing, and on
going to the justice and stating the case to the justice he con-
cealed the facts which, if they had been disclosed, would have
shown the justice there was no stealing and that there had
been no crime committed. The testimony in the case before
the lower court is here in the statement, and it nowhere ap-
pears that defendant was ignorant of the facts. He had
declared that he would have the plaintiff arrested for steal-

ing, and he must have gone to the justice with that deter-
mination in his mind, and there is no dispute but what he
knew the facts just as enumerated above; and, if so, he doubt-
less knew that if he made a fair and full statement to the
justice, that officer would refuse to issue a warrant.    What
other facts would be necessary to show malice on the part of
the defendant?    It is true defendant did not appear when the
trial was to take place before the justice.    But why should he
when he knew that no crime had been committed?    He prob-
ably had done the plaintiff all the damage and put him to all
the trouble and expense defendant's malice prompted.

At the trial in the lower court the defendant offered no
evidence whatever, relying wholly upon the three points: that
plaintiff was arrested upon a warrant in which the name of
"Schochran," and not "Cochran," was used; that he had
fully stated the facts to the justice and that the justice ad-
vised him the crime was petit larceny; and that the criminal
complaint did not charge a crime.

The findings are sustained by ample and uncontradicted
evidence, and the findings support the judgment.

The judgment is affirmed.

McLaughlin, J., and Chipman, P. J., concurred.

A petition to have the cause heard by the supreme court
after judgment in the district court of appeal was denied by
the supreme court on December 8, 1905.