[Civ. No. 4121.   Second Appellate District, Division One.—December 24, 1924.]

## MARY E. PICKERING, Appellant, v. CORA HAVENS, Respondent.

[1] MALICIOUS PROSECUTION—PROBABLE CAUSE—MALICE.—In an action of malicious prosecution the plaintiff, in order to recover against the defendant must show want of probable cause for the institution of the criminal prosecution and malice on the part of the defendant in instituting said prosecution.

[2] ID.—PROBABLE CAUSE—FACT—QUESTION OF LAW.—The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it probable are true and existed is a matter of fact, and to be determined by the jury; but whether, supposing this to be true, they amount to probable cause, is a question of law.

[3] ID.—PROTECTION OF PROPERTY—CRIMINAL PROSECUTION—MALICE.—The contention that the institution of a criminal action, solely for the purpose of protecting property, is conclusively deemed to be malicious, cannot be sustained.

[4] ID. — MALICE — WHAT CONSTITUTES—PRESUMPTIONS—EVIDENCE.—There is no legal presumption of malice and although malice may be inferred from want of probable cause or other circumstance, as an inference of fact, still, whether by inference or otherwise, it must be proven as a fact. To constitute malice there must be *malus animus* denoting that the party who instituted the proceeding was actuated by wrong motives, i. e., he must have had in his mind some evil or sinister purpose.

[5] ID.—ACTION FOR DAMAGES—MALICE—EVIDENCE.—In this action for damages for an alleged malicious prosecution following plaintiff's arrest caused by defendant for taking the latter's property, as the evidence fails to show that the defendant was actuated by any "evil or sinister purpose" in the institution of the criminal proceeding against the plaintiff, it is concluded not only that malice does not appear affirmatively from the evidence, but that the verdict of the jury in defendant's favor is fully justified and supported by the evidence.

---

1.   Malice as element of malicious prosecution, note, 21 Ann. Cas. 756.   See, also, 18 R. C. L. 28; 16 Cal. Jur. 735.

2.   See 18 R. C. L. 30.

4.   See 18 R. C. L. 31.

[6] ID.—FRAUD — INSTRUCTIONS —PLEADING—EVIDENCE.—In such action, an instruction that "under the evidence in this case the defendant . . . was not guilty of any fraud in the execution of the bill of sale" of certain furniture sold by plaintiff to defendant, was in no way prejudicial to plaintiff, where no fraud was pleaded, and there was no evidence that the defendant had practiced fraud upon the plaintiff.

[7] ID.—MALICE—REJECTED INSTRUCTION.—In such action, an instruction proposed by plaintiff "That the commencement of a criminal prosecution by a defendant simply for the purpose of enforcing a civil right of said defendant, or of defeating a civil right or claim to a civil right of the person so prosecuted, would be an abuse of the process of the court and would be conclusive evidence of malice on the part of the person commencing such prosecution, and in such case the advice of counsel would be no protection," was properly refused by the trial court, as there was no evidence in the case that would justify the giving of the instruction.

[8] ID.—INSTRUCTIONS.—In such action, an instruction given by the trial court telling the jury in effect that if they found from the evidence that plaintiff's claim to the property was made in good faith, and that such claim was known to defendant, and that it was made under such circumstances as would lead a reasonable person to believe that it was made in good faith, and they further found that defendant instituted the prosecution maliciously, with intent to further her claim to the property in dispute, and to retain the same or to escape a lawsuit therefor, they should find for the plaintiff, even though they were unable to determine whose claim was just and to whom the property belonged, was unobjectionable.

---

(1) 38 C. J., p. 476, n. 94, p. 478, n. 16.   (2) 38 C. J., p. 502, n. 18, 19, p. 503, n. 20.   (3) 38 C. J., p. 481, n. 47, p. 500, n. 83, 87, 90.   (4) 38 C. J., p. 422, n. 77, p. 423, n. 89, p. 425, n. 9, p. 478, n. 16, p. 481, n. 56.   (5) 38 C. J., p. 500, n. 83.   (6) 4 C. J., p. 1033, n. 37, p. 1035, n. 46; 38 C. J., p. 518, n. 27.   (7) 38 C. J., p. 512, n. 19; 38 Cyc., p. 1618, n. 36, p. 1619, n. 38.   (8) 38 C. J., p. 515, n. 65.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

---

7. Advice of counsel as defense to an action for malicious prosecution, notes, 1 Ann. Cas. 923; 11 Ann. Cas. 954; Ann. Cas. 1912D, 423; 18 L. R. A. (N. S.) 49; 39 L. R. A. (N. S.) 207.

Acting on advice of justice of the peace, magistrate or layman as defense in action for malicious prosecution, notes, 16 Ann. Cas. 718; Ann. Cas. 1918A, 498; 12 A. L. R. 1230.

The facts are stated in the opinion of the court.

Leon R. Yankwich and F. W. Shelley for Appellant.

Hahn, Hahn & Landreth for Respondent.

CURTIS, J.—Action to recover damages for malicious prosecution. Judgment rendered in favor of defendant and plaintiff appeals. Appellant and her husband, John W. Pickering, were the owners of the Raymond Villa, a rooming-house in the city of Pasadena, together with the furniture therein. On February 16, 1920, they leased these premises to the respondent, and at the same time they sold to respondent all the furniture in said rooming-house, excepting certain specific articles. A written lease to the premises was executed by the parties and appellant and her husband also gave to respondent a bill of sale of the furniture sold. In the bill of sale the furniture reserved from the sale by appellant and her husband was particularly described and excepted from the sale. There was also a separate list of this reserved furniture, made out and signed by respondent and given to the Pickerings. It was agreed by the parties at the time, and so specified in writing, that the furniture reserved by the appellant and her husband should remain in the lodging-house until other furniture belonging to the respondent should arrive from the east. Respondent paid to the appellant and her husband for said furniture the sum of twelve hundred dollars. She also paid them two months' rental of the rooming-house and took possession of the house and furniture immediately after the sale. A Mr. Hisey had acted as the agent of appellant and her husband in their negotiations with the respondent and had prepared the above-mentioned papers evidencing the transaction between the parties. Some time after the sale, and probably a few days prior to March 31, 1920, appellant's husband called upon Mr. Hisey and said to him "that when they went out to look for a house or apartment such as they thought they wanted, they found that the rents and everything had gone very high, much higher than they had expected, and he thought they had sold their stuff too cheap." He practically demanded of Mr. Hisey that the latter do something to annul the sale or change it. Mr. Hisey explained to Mr. Pickering that the sale had been made as agreed upon, and that

the transaction was a closed one, and that it was beyond his power to do anything in the way of changing the terms of the sale. A rather lengthy conversation was had between the two, and finally Mr. Pickering said: "Well, we have been a couple of old fools, that is all. I'm going to law about this anyway." About this time Mr. Pickering called upon respondent and stated that he was going to sell what things he had in the house. Respondent replied that he hadn't anything except the things he had reserved. Pickering replied, "Why, I certainly have." Respondent then got her bill of sale and showed it to Pickering, who said, "We did sign that, didn't we? I don't remember." He then said, "We will have to go to law about this." The next day Pickering and his wife came to the lodging-house and began removing a portion of the furniture which they had sold to respondent and loading it on a truck. They did not at this time make any claim to the ownership of the furniture, nor did they offer any explanation of their action in removing the furniture. They simply by sheer force began its removal. At the trial it appears that they claimed that they did not sign the bill of sale or that they did not intend to sell all the property called for by the bill of sale which they did sign. They did not, however, prior to their attempting to remove the furniture from the lodging-house, or at the time of its attempted removal, make known to respondent either of these claims. The respondent, being unable to prevent them from taking the furniture, called the constable of the township, who stated to respondent that he could do nothing without a warrant of arrest. Whereupon respondent sought the advice of Edwin F. Hahn, Esquire, a practicing attorney in the city of Pasadena, and now one of the superior judges of the county of Los Angeles. She stated the facts of the case to him, and was advised by him that the Pickerings were guilty of larceny and that she should proceed to the office of the justice of the peace and have a warrant for their arrest issued by that magistrate. Respondent did as advised by her attorney and a warrant for the arrest of appellant and her husband was issued and delivered to a peace officer for service. It was served upon appellant by the peace officer taking her into custody. He did not, however, imprison her, but suffered her to go upon her own recognizance. Two days thereafter her preliminary examination was held. After hearing the testimony of Mr.

Hisey, the charge against appellant, upon motion of the district attorney, was dismissed and appellant was discharged. Whereupon plaintiff instituted this action for malicious prosecution.

[1] It is well settled in actions of malicious prosecution that plaintiff, in order to recover against the defendant, must show want of probable cause for the institution of the criminal prosecution and malice on the part of the defendant in instituting said prosecution. (*Redgate* v. *Southern Pac. Co.*, 24 Cal. App. 573 [141 Pac. 1191].) In the present action the court instructed the jury regarding probable cause as follows: "It is for the court to determine whether there is probable cause or not, and I instruct the jury that there was not probable cause for the bringing of this criminal action."

In view of this instruction, we will limit our consideration of the case to the contention of appellant that the evidence is not sufficient to support the implied finding of the jury that defendant did not act with malice in the institution of the criminal action. In doing so we do not wish to be understood as approving the action of the court in giving this instruction. [2] "The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it probable are true and existed is a matter of fact, and to be determined by the jury; but whether, supposing this to be true, they amount to probable cause, is a question of law." (Newell on Malicious Prosecution, p. 276; *Sandell* v. *Sherman,* 107 Cal. 391–394 [40 Pac. 493].)

[3] The first contention of appellant is that malice appears affirmatively from the evidence. In this connection appellant claims that the evidence shows that the only motive of respondent in instituting the criminal action was for the protection of her property from the appellant and her husband. This claim is based upon the testimony of respondent, and particularly that contained in the following question propounded to respondent by the court and her answer thereto: "You did that (institute the criminal proceeding) not for the purpose of having the laws enforced, but you did it for the purpose of protecting your property. A. Yes." From this answer, appellant contends, it conclusively appears that the only motive of respondent in insti-

tuting the criminal action was for the protection of her property. Such a motive, appellant insists, for the institution of a criminal action, is by law deemed to be malicious. In support of this contention appellant has cited a number of authorities, among which are *Cochran* v. *Bones*, 1 Cal. App. 729 [182 Pac. 970], and *Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578]. A number of cases from other jurisdictions are cited by appellant, but these two from the courts of California are fairly typical of all those cited. In each of these cases the verdict of the jury was in favor of the plaintiff and on appeal it was held that the evidence in each case was sufficient to justify the verdict. In each of these cases it is apparent from the facts, as stated in the opinion, that the defendant was actuated by express malice in the institution of the criminal proceedings. In *Cochran* v. *Bones, supra,* the defendant had charged the plaintiff with the theft of a hog. The appellate court, in sustaining the judgment, said: "That it [the prosecution] was malicious, there can be no doubt. As has been seen, the parties had talked about the detention of the hog in which plaintiff informed the defendant that the hog had strayed on to his premises, did damage, and was detained until damage done by said hog should be paid for. Defendant knew he could get his hog by paying the damage done, and instead of doing so had declared he would have the hog and would have plaintiff arrested for stealing, and on going to the justice he concealed the facts which, if they had been disclosed, would have shown the justice that there had been no crime committed."

In *Burke* v. *Watts, supra,* the parties had a dispute about the ownership of a number of folding beds which had been a part of the furnishings of an apartment house. The plaintiff claimed to own them by virtue of a purchase by him of the furniture in said apartment house. The defendant, who was the owner of the building, claimed that they were a part of the building and therefore belonged to him. They were removed by the plaintiff from the apartment house and the defendant swore to a complaint, charging the plaintiff with grand larceny in taking and stealing them from the building. At the preliminary examination the criminal action was dismissed. Plaintiff then instituted an action against the defendant to recover damages, claiming that the prosecution was malicious. At the trial it appeared that the defendant had said to the plaintiff, "I'll fix you; I fixed you once and

I'll fix you again. I told you I would fix you, you crook, I'll fix you all the time." And on another occasion the defendant, referring to plaintiff, had said to the officer who arrested plaintiff, "There he is; arrest him and take him down, lock him up, put him in jail, he is a crook. I am going to send him to the penitentiary." In its opinion affirming the judgment in this action, the supreme court said, "There is other evidence that before this conversation appellant showed anger toward respondent as a result of their dealings. From this testimony and evidence that appellant knew respondent actually claimed title to the beds, the jury might have concluded that appellant was prompted by a malicious motive in causing the prosecution of respondent." We think it will be conceded that neither of these cases can be considered as an authority supporting appellant's contention that a prosecution, instituted for the sole purpose of protecting property, is conclusively deemed to be malicious. The other cases cited by appellant from foreign jurisdictions are no more favorable to her contention than are the two cases which we have briefly reviewed and which were decided by the courts of our own state.

Furthermore, we are convinced, from a consideration of the testimony in the case as a whole, that the jury were justified in rendering a verdict in defendant's favor on the ground that no malice was shown. We think the testimony shows that defendant, at the time she swore to the complaint against the plaintiff, believed that the plaintiff and her husband were guilty of the crime charged therein. The defendant was a woman of limited business experience and unfamiliar with legal terms or court procedure. When this trouble arose she sought the advice of a competent and reliable attorney, and made to him a full and fair statement of all the facts of the case. Upon hearing her statement, the attorney advised her that the Pickerings were guilty of larceny and that she might have them arrested. She acted upon this advice and went to the office of the justice of the peace for this purpose. This officer concluded that the charge should be burglary instead of larceny, and prepared the complaint accordingly. Why should she not believe these men? One, following the law as a profession, and the other executing it as an official, caused her to have every confidence in them and to believe that they were familiar with the laws governing her case. When they told her that ap-

pellant and her husband were committing a crime in entering her house and removing therefrom property that she had bought from them, it is very evident to us that she believed what they told her. Had they advised her to institute a civil action, there is nothing in the evidence to indicate that she would not have followed their advice as readily and as willingly as she did when they advised a criminal proceeding. Furthermore, we have not had called to our attention, nor have we found from an independent examination of the testimony in the case, one act or word of the defendant that would indicate in the least degree that in the institution of the criminal action she acted with any ill will toward the plaintiff or with any desire to injure her. [4] ''There is no legal presumption of malice and although malice may be inferred from want of probable cause or other circumstance, as an inference of fact, still, whether by inference or otherwise, it must be proven as a fact. 'To constitute malice there must be *malus animus* denoting that the party who instituted the proceeding was actuated by wrong motives,' i. e., he must have had in his mind some evil or sinister purpose.'' (*Redgate* v. *Southern Pac. Co.*, 24 Cal. App. 573, 584 [141 Pac. 1191].) [5] As the evidence fails to show that the defendant was actuated by any such ''evil or sinister purpose'' in the institution of the criminal proceeding against the plaintiff in this case, we conclude not only that malice does not appear affirmatively from the evidence, but that the verdict of the jury in defendant's favor is fully justified and supported by the evidence.

[6] The next contention of appellant is in reference to the instructions. Appellant excepts to the instruction of the court that ''under the evidence in this case the defendant Mrs. Havens was not guilty of any fraud in the execution of the bill of sale.'' No fraud was pleaded, nor was there any evidence that the defendant had practiced fraud upon the plaintiff. It was claimed by appellant and her husband that they did not intend to sign any bill of sale of any furniture, and that if they did sign any such document, it was not done intentionally or with knowledge of its contents. The papers evidencing the agreement of these parties, as we have already seen, were prepared by Mr. Hisey, the agent of the Pickerings. There is an intimation that Mr. Hisey had prepared papers different from those which the Pickerings had agreed to sign and which they understood he was

to prepare, and that when they signed them they did not understand their contents nor realize that they were executing a bill of sale of any furniture. The testimony of the Pickerings upon this point is vague, uncertain, and unsatisfactory, and but little, if any, weight could be given to it. But aside from its infirmity in this respect, it does not in any way connect, or attempt to connect, the defendant with any acts of Mr. Hisey which they contend were improper. The instruction under these circumstances, therefore, was in no way prejudicial to appellant. There was absolutely no proof of fraud.

[7] A further objection is made to the action of the court in refusing to give an instruction, proposed by appellant, "That the commencement of a criminal prosecution by a defendant simply for the purpose of enforcing a civil right of said defendant, or of defeating a civil right or claim to a civil right of the person so prosecuted, would be an abuse of the process of the court and would be conclusive evidence of malice on the part of the person commencing such prosecution, and in such case the advice of counsel would be no protection." [8] In the place and stead of this instruction the court gave the following instruction: "If you find from the evidence that the Pickerings' claim to the property was made in good faith, and that such claim was known to Mrs. Havens, and that it was made under such circumstances as would lead a reasonable person to believe that it was made in good faith, and you further find that Mrs. Havens instituted the prosecution maliciously, with intent to further her claim to the property in dispute, and to retain the same or to escape a lawsuit therefor, you may find for the plaintiff, Mary Pickering, even though you are unable to determine whose claim was just and to whom the property belonged." The only criticism offered by appellant to this instruction is to the word "maliciously" contained therein. This criticism is stated by appellant's counsel in their brief as follows: "The instruction given by the court, however, added another element not required by law, to wit, malice, and made it necessary for the jury to find that: (1) The proceeding was instituted solely for private gain, and (2) that it was instituted maliciously before they could return a verdict for the plaintiff." As we have before stated, in discussing the first point made by appellant, the authorities cited by her fail to support her contention that the institution of a criminal

action, solely for the purpose of protecting property, conclusively shows malice, and we know of no authorities declaring such a doctrine. Furthermore, in this action we find no evidence tending to show any such motive on the part of the defendant. It is true that from her answer to the question of the court above referred to, it might be inferred that such was her motive, yet when we consider her whole testimony, we can draw no such inference. In our opinion, the instruction given by the court was unobjectionable. As to the instruction proposed by appellant and refused by the court, there was no evidence in the case that would justify the giving of this instruction, and it was properly refused by the court.

Judgment affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 17, 1925.