[L. A. No. 11538. In Bank.—December 28, 1931.]

RAY PASKLE, Appellant, v. J. A. WILLIAMS et al., Respondents.

Rollin L. McNitt, Loewenthal, Lissner, Roth & Gunter, Lissner & Gunter and Edythe Jacobs for Appellant.

Paul Barksdale D'Orr, Thomas A. Reynolds and Young & Hudson for Respondents.

PRESTON, J.—Action for malicious prosecution. Judgment of nonsuit granted at the close of plaintiff's evidence. The appeal is from this judgment.

The action complained of was instituted by Seventh & Hill Building, Inc., a corporation, on November 22, 1923, against this plaintiff. The other defendants here are made parties to the present proceeding by allegations of conspiracy to bring about and prosecute said litigation. The action was brought in the Superior Court of Los Angeles County to recover rent, with prayer for a judgment of $750, upon which an attachment was sued out on said day and levied upon a small stock in trade of this plaintiff and trade

fixtures to which he had no title. He defended in said action by answer and also by cross-complaint asking various kinds of affirmative relief, the exact nature of which is not disclosed by this record. No effort was made, so far as is disclosed, to have the attachment dissolved by order of court. The case, although at issue, dragged and was finally dismissed by a stipulation of the parties on July 22, 1927, which stipulation read:

"No. 132–545—Stipulation. It is hereby stipulated that the complaint in the above entitled action may be dismissed. Dated at Los Angeles, California, July 22, 1927. Paul B. D'Orr, Carroll Allen, Attorneys for Plaintiff and cross-defendants Seventh & Hill Building, et al., Loewenthal, Lissner, Roth & Gunter, Attorneys for Defendant and cross-complainant."

To this stipulation was added an *ex parte* reservation as follows, to wit:

"Defendant and cross-complainant hereby dismisses its cross-complaint on file herein without prejudice to its rights and not as consideration for the dismissal of plaintiff above. Defendant and cross-complainant hereby asserts and recites that he intends to enforce his rights as set forth in the facts alleged in his cross-complaint, the denials and averments of his answer and as they may otherwise exist. Loewenthal, Lissner, Roth & Gunter, Attorneys for defendant and cross-complainant."

■ The question arises at this juncture whether such a termination of the litigation fixes a basis for the institution and maintenance of an action for malicious prosecution. For the rule in this behalf see 38 Corpus Juris, pages 443, 444, where it is stated as follows: "Where the termination of a criminal prosecution or civil action has been brought about by the procurement of defendant therein, or by compromise and settlement, an action for malicious prosecution cannot be maintained." (*Halberstadt* v. *New York Life Ins. Co.*, 194 N. Y. 1, 10 [16 Ann. Cas. 1102, 21 L. R. A. (N. S.) 293, 86 N. E. 801].)

■ In view of the cross-complaint, the cause could only be terminated by judgment on the merits or by action of the plaintiff with the consent of the defendant. (Sec. 581, subds. 1 and 2, Code Civ. Proc.) A large part of the claim for back rent would be lost in a new suit on a plea of the

statute of limitations. No decision was ever made adjudicating the attachment void and it is difficult to draw a conclusion of lack of probable cause from such termination of the cause. It is at least doubtful whether the rule involved in *Kinsey* v. *Wallace*, 36 Cal. 462, has any application to a situation like the one before us. But it is unnecessary to pause for a definite determination of this question for we think it otherwise appears that not only probable cause but legal cause existed for the prosecution of said litigation; hence for that reason alone the judgment of nonsuit was properly granted.

A recital of the essential underlying facts will now be made: Defendants Williams and wife, prior to March 22, 1922, owned a lot near the corner of Seventh and Hill Streets in Los Angeles upon which was about to be erected a large building to be owned by the defendant Seventh & Hill Building, Inc., a corporation, in which the individual defendants were stockholders. Contemplating occupation of this building by a department store on the main floor and a large market in the basement, a lease prior to construction was executed by Williams and wife to one Goodman, who in turn began at once and before construction to make and issue subleases to various persons for space both in the basement and upon the main floor, among whom was plaintiff. To him he demised a space, known as concession 17–A, approximately nine feet by nine feet, in the basement, to be used for the sale of butter, eggs, cheese, etc. The sublease bore date of October 7, 1922, called for the deposit of $186.65 and a monthly rental of $160, and was to cover a term of five years commencing November 8, 1922. The deposit and one month's rental were paid and plaintiff at about this time entered into possession of the concession and remained in possession of it until November 23, 1923, when said attachment was served, without any further payment of rent whatsoever except that in January, 1923, he paid a representative of the owner the sum of $80 on account of rent.

Goodman, without even opening the department store, deserted the project and the owners, through defendant Dunn-Williams Company, a copartnership, repossessed the building on or about December 15, 1922. At this time

Williams assembled the various concessionaires in groups and discussed their plight with them. The basement group was addressed, at which meeting plaintiff was present. Williams informed them that as owners they would try to operate the department store themselves and would co-operate to make the market project in the basement a success also. He also promised, if desired, to recognize their leases with Goodman. He also conceded a reduction in rent to about half the amount called for in said leases. He also requested from them a *pro rata* contribution to costs of advertising and other miscellaneous expenses incidental to the general plan for promoting said market.

Apparently plaintiff, with the rest, was well satisfied with this pledge by Williams and with the endeavor to make the store above and the market below a success. Plaintiff paid in January, 1923, the sum of $80 as rent, as aforesaid, and likewise paid from time to time his *pro rata* of the general expense. Plaintiff states that in the month of February he offered to pay a like sum of $80, but the party to whom he made the offer showed no particular inclination to accept it and the money was not paid. At about this time it also appeared that the plans to make the department store and market a success would probably fail and the owners decided, at an expense of about $80,000, to alter the building and convert it into an office building. To that end work was begun and operations were carried on for a long period of time in the upper portion of the building without substantial disturbance of conditions in the basement.

Plaintiff continued in possession at his stand until the levy of the attachment above mentioned—a period of more than eleven months after Goodman left—during which time he paid no rentals whatsoever other than the said item of $80. Prior to July 1, 1923, various statements were rendered to him by the owners, which included items for rent due at the rate of $160 per month, but plaintiff ignored these statements in so far as the rent demand was concerned. A statement on July 1, 1923, showed the sum of $898.84 due for unpaid rent. This demand plaintiff not only refused to pay, but he also repudiated defendants as his landlord and continued in possession as before. On July 16, 1923, a notice was served upon plaintiff that from and after September 1st, his rent would be $250 a month. This demand plaintiff

likewise entirely ignored. Later, on November 8, 1923, a second notice was served upon him raising his rent to $500 per month from and after January 1, 1924. This, too, was ignored, but before the time mentioned therein expired, to wit, on November 22, 1923, the action complained of was begun against plaintiff.

The complaint is not set forth in the record, but excerpts from it are found from which plaintiff insists that the suit was merely for the September, October and November rent at $250 a month and it did not include a demand for other items of rent which might be claimed to be in arrears. Be that as it may, plaintiff was certainly indebted to the owners for rent for more than the amount sued for. He predicates his claim of malice upon the lack of probable cause and he bases the claim of lack of probable cause upon the contention that defendants admit that they preferred to have the plaintiff surrender his space in the basement rather than having him pay the items of rent then due. In other words, the claim is that avowedly defendants had decided upon other plans for use and occupation of the building which were inconsistent with allowing plaintiff to remain in said space and in furtherance of this change of plans they desired to force plaintiff out of the building and to do so brought said attachment suit.

This contention may be practically conceded for the purposes of this case, but such concession is not decisive of the appeal. On the contrary, the motive, even if malicious, of defendants is unimportant if legal ground existed upon which to predicate the suit in question. Enough has been set forth to show that when Goodman surrendered the premises, it was the duty of plaintiff here to attorn to the owners of the building as the surrenderee of the premises or else to make a new agreement with them. Certainly under the facts of this case it must be held that plaintiff did one or the other of these things. Or to put it another way, plaintiff either became a new tenant of the owners on a month to month basis or else the owners were substituted for Goodman under the original lease. Under either hypothesis it was the duty of plaintiff to pay his rent. That being true, the suit was proper and, of course, the attachment would lie as ancillary thereto. We see nothing whatever to justify a finding that during all these eleven months plaintiff suf-

fered a partial eviction and for that reason was absolved from the payment of rent.

Under this conclusion the principles of law controlling probable cause and malice as well as the termination of the action in question are not involved. The questions of conspiracy and errors, if any, in the admission and rejection of evidence are likewise unimportant. The vital fact is that Seventh & Hill Building, Inc., had a legal claim against this plaintiff for as much or more than the amount it sued for.

The judgment is affirmed.

Curtis, J., Langdon, J., Seawell, J., Richards, J., Shenk, J., and Waste, C. J., concurred.