[Civ. No. 7038. Third Dist. June 14, 1944.]

J. L. HUDSON, Respondent, v. I. G. ZUMWALT et al.,
Appellants.

Seth Millington and C. D. Comish for Appellants.

E. Vayne Miller, Robert A. Zarick and Ivan C. Sperbeck for Respondent.

THOMPSON, J.—The defendants, I. G. Zumwalt and L. J. Lowry, have appealed from a judgment which was rendered against them pursuant to the verdict of a jury, in a suit upon a bond furnished by appellants upon the issuance of a temporary restraining order in another action to terminate plaintiff's lease of a gas station for breach of covenant to pay the rent. The judgment from which this appeal is taken also includes further damages for malicious prosecution of the suit to terminate the lease. A motion for nonsuit and a motion for new trial were denied.

The complaint in this case was couched in two counts. The first cause was for damages sustained in the sale of plaintiff's equipment and loss of profits in his business on account of the restraining order. He claims to have lost an offer of $2,500 for his business and equipment. He sold the equip-

ment for $750. The second cause was for damages for malicious prosecution of the suit for possession of the gas station. The $1,000 bond was executed by I. G. Zumwalt, L. J. Lowry and Leon Spier. Pending the trial, Leon Spier died and the action against him was dismissed. At the close of plaintiff's evidence a nonsuit was granted as to the defendants George R. Zumwalt and Lionel R. Zumwalt. The jury returned a verdict against I. G. Zumwalt and L. J. Lowry on the first count of the complaint in the sum of $1,000. On the second count the jury returned a verdict against I. G. Zumwalt for $4,000 compensatory damages and the additional sum of $1,000 as exemplary damages. Judgment was rendered against I. G. Zumwalt and L. J. Lowry for $1,000, and against I. G. Zumwalt only for the additional sum of $4,000.

Cora Elizabeth Wickes Thornton owned a gas station lot at Willows in Glenn County. April 30, 1936, she executed a written lease of the property to J. L. Hudson for one year at $25 per month, payable in advance on the first day of each month. The lease provided that after the expiration of the year the lessee would be deemed to hold possession of the property "from month to month" on the same terms. The lease also provided that at the expiration of the term the lessee should have ten days within which to remove all of his improvements "including buried tanks but excluding all plumbing and plumbing fixtures and all sewer, water, gas and electric connections and also excluding cement or gravel walks, runways and approaches and all foundations," provided he was not then in default of any of the terms of the lease. May 1, 1936, Mr. Hudson took possession and operated the gas station until August 6, 1937. He constructed and equipped the gas station on that lot including the installation of two 500-gallon tanks, one 10,000-gallon tank, three gas pumps, one service station building, two toilets, two flood lights, water fixtures, air fixtures, one air compressor, approaches to the roads and he surfaced the yard with gravel, all at a total expense of $3,050. April 30, 1937, Mr. Hudson became ill and orally agreed with C. R. Wickes, the father of the lessor, to thereafter continue the lease from month to month for the rental of $15 per month payable on the first of each month in advance. Mr. Wickes, as the agent for his daughter, the lessor, on May 28, 1937, listed the gas station property for sale with L. J. Lowry, a real estate broker, for

the sum of $2,500. He testified that he then told Lowry that "Mr. Hudson's lease had expired and that he wanted the privilege of moving off on account of his health and I told him at the time that if he would stay there I would reduce the rent to $15.00 a month with the privilege of moving his equipment off according to the original lease."

May 28, 1937, Mrs. Thornton, the owner of the property, signed a written agreement to sell the gas station lot to the I. G. Zumwalt Company for $2,500, which was subsequently fully paid and a duly executed deed therefor was delivered to the purchaser on June 8th of that year. At that time a copy of Hudson's written lease was delivered to I. G. Zumwalt. Mr. Lowry, the real estate agent, told him the lease had expired and that Mr. Hudson was holding possession of the property from month to month at $25 rental per month. Lowry testified that he did not learn of the oral agreement of Mr. Wickes for Hudson to retain possession from month to month for the reduced rental of $15 per month until after the sale to Zumwalt had been consummated. Zumwalt testified that he had no such knowledge. In May and June, 1937, Mr. Hudson paid Wickes $15 rent for each of those two months.

July 1st Hudson first learned that the property had been sold to the Zumwalt Company, and on the 6th of that month he visited Mr. I. G. Zumwalt at Colusa, and offered to pay $15 rent for July with his check on a Willows bank. Zumwalt refused to accept it, saying the amount of his rent was $25. Mr. Hudson testified that he replied, "Well, if it's going to be $25.00 I will go home and move off." Mr. Zumwalt said: "Oh, no, you can't move that equipment off from my property." Mr. Hudson further testified that: "I said 'Mr. Zumwalt, my agreement with Mr. Wickes is that I can move off. The law is on my side. I will go home and move off by the first of the month.' And he said 'I don't care what your agreement is with Mr. Wickes or what the law is, I know how to get around the law. I will throw you in court and hold you there until you will be glad to sell,' so I said 'Well, I offered you my rent of $15.00 and I will give you $10.00 more and I will go home and be gone by the 1st of the month.' He said, 'Well, maybe your rent will be $75.00,' and I knew there was no use of arguing further, so I got up and walked out."

July 14th, I. G. Zumwalt served Mr. Hudson with notice of the termination of his lease and to quit the premises.

During the trial of the possessory action, by agreement between respective parties, that suit was dismissed. The restraining order was dissolved. Zumwalt waived the rent which was due, and consented to the removal of the equipment by the lessee. Zumwalt bought one of the tanks from Hudson. The lessee sold his entire equipment for $750. He did not operate his gas station after August 6th, when the temporary restraining order was issued and served. It prohibited him during the pendency of the action from removing the "buildings, improvements, fixtures, including tanks buried in the ground."

This suit for malicious prosecution was commenced October 29, 1939. It is contended there is no evidence to support the judgment for damages on the undertaking bond for $1,000 based on the first count, and that there is no evidence to support the penalty of $4,000 on the second count for malicious prosecution of the possessory action.

We are of the opinion the judgment for damages in the sum of $1,000 sustained on account of the sale of plaintiff's equipment and improvements is supported by the evidence. There is evidence that Mr. Hudson in June, 1937, had an agreement to sell his improvements and equipment to Clarence O. Swarner for $2,500, if he could find a suitable location to which he could remove it; that he did find such location at Live Oak, and was anxious to complete the purchase, but the injunction then prevented the sale. There is evidence that the improvements and equipment which Hudson placed on the premises cost him $3,050. He had used this property only about a year, but the deterioration and cost of removal would reduce its value considerably. It is true that the plaintiff did include in his complaint as an element of damages counsel fees incident to the vacating of the restraining order, and a loss of income on account of the suit. He testified that his income was reduced on account of the injunction from $10 a day to about $1.40 per day. But those elements of damages are of slight consequence. He operated the business only about a month after the restraining order was issued. But without the last mentioned items the evidence is sufficient to support damages on the first count in the sum of $1,000.

A more serious question is presented as to whether

there is sufficient evidence to support the judgment of $4,000 for malicious prosecution.

It becomes necessary to determine whether the former suit was commenced maliciously without probable cause, and that it terminated favorably to J. L. Hudson. ■ The burden is on one who seeks to recover damages for malicious prosecution to prove the foregoing issues. (*Griswold* v. *Griswold,* 143 Cal. 617 [77 P. 672]; *Garfield* v. *Peoples Finance & Thrift Co.,* 24 Cal.App.2d 144, 157 [74 P.2d 1061]; 16 Cal. Jur. 734, § 7.) ■ Malice does not necessarily infer the presence of anger or vindictiveness. It is sufficient if it appears that the former suit was commenced in bad faith to vex, annoy or wrong the adverse party. (Pen. Code, § 7, subd. 4; *Griswold* v. *Griswold, supra,* p. 620; *MacGruer* v. *Denivelle,* 113 Cal.App. 49, 54 [297 P. 633]; 16 Cal.Jur. 736, § 8. ■ "Probable cause," as it relates to actions for malicious prosecution, may exist when one possesses a suspicion or draws a conclusion which is founded on circumstances sufficiently strong to warrant a reasonable person to assume the truth of the charge. (*Lee* v. *Levison,* 173 Cal. 166 [159 P. 438]; *Sebastian* v. *Crowley,* 38 Cal.App.2d 194 [101 P.2d 120]; *Perry* v. *Washington National Ins. Co.,* 14 Cal.App.2d 609 [59 P.2d 158].) ■ The mere proof of want of *probable cause* is not sufficient to justify a verdict or judgment for malicious prosecution. It is also necessary to prove actual malice. (*Vesper* v. *Crane Co.,* 165 Cal. 36 [130 P. 876, L.R.A. 1915A 541].) There is no distinction in that regard between civil suits and criminal actions. (16 Cal.Jur. 735, § 8.) ■ The knowledge of facts which may justify the alleged malicious suit is that which is possessed *at the time of its commencement* and not that which is subsequently acquired. (*Richter* v. *Neilson,* 11 Cal.App.2d 503, 515 [54 P.2d 54].) ■ While it is necessary to prove that the former malicious action was terminated favorably to the party claiming injury, it need not be shown that it was finally decided on its merits. It is sufficient if it was disposed of in such a manner as to require the plaintiff to institute another action to try the issues presented. (*Hurgren* v. *Union Mutual Life Ins. Co.,* 141 Cal. 585 [75 P. 168]; *Jaffe* v. *Stone,* 18 Cal.2d 146 [114 P.2d 335, 135 A.L.R. 775]; 16 Cal.Jur. 734, § 7; 135 A.L.R. 793, note.)

■ While there is a conflict of evidence in this case regarding the good faith or motive which prompted Mr. Zum-

walt to bring the suit against Hudson for unlawful detention of the property, there is adequate proof that it was maliciously instituted to vex and annoy the lessee or to force him to sell his trade fixtures. The written lease specifically provides that if the lessee held over after the expiration of one year, for which it was executed, "such tenancy shall be from month to month." (Civ. Code, § 1946.) That tenancy required one month's notice to terminate it. After the expiration of the written lease the lessor orally agreed to reduce his rent to $15 per month and authorized him to remove his improvements and fixtures. Proof of that oral reduction of rent appears from the fact that the owner accepted two $15 payments of rent for the months of May and June. When Mr. Hudson discovered that Zumwalt had purchased the property he went to see him at Colusa on July 6th to pay his rent, which he offered to do by means of a $15 check. A dispute then occurred as to whether the rent for July was to be $25 or only $15. Hudson then told Mr. Zumwalt it had been reduced to $15, which he refused to accept. It is immaterial for the purposes of this malicious prosecution suit that Hudson failed to make his tender good by depositing the check in a bank and giving notice thereof to the creditor as provided by section 1500 of the Civil Code, for Zumwalt positively refused to accept that sum in full payment of the rent. He did not then question the validity of the check. The statements which were then made furnish some evidence of malice on his part. When Hudson told him that if the rent was to be $25 per month "I will go home and move off," Mr. Zumwalt replied, "Oh, no, you can't move that equipmnet off from my property. . . . I don't care what your agreement is with Mr. Wickes, or what the law is, I know how to get around the law, I will throw you in court and hold you there until you will be glad to sell." It is true that Mr. Zumwalt denied making those statements, but the truthfulness of those statements was a matter for the determination of the jury. With its conclusions in that regard we may not interfere.

The next question to be determined is whether there was probable cause to believe that the suit in unlawful detainer under section 1161 of the Code of Civil Procedure was justified and brought in good faith. It was said by the Supreme Court in *Paskle* v. *Williams,* 214 Cal. 482, at page 487 [6 P.2d 505]:

"The motive, even if malicious, of defendants is unimportant if legal ground existed upon which to predicate the suit in question."

Mr. Zumwalt had the written lease in his possession. He exhibited it to his attorney. He must have known that it provided for tenure "from month to month," after the expiration of the written lease. The tenancy from month to month could not be lawfully terminated for nonpayment of rent for the month of July, except upon notice as provided by either section 1161, subdivision 2, of the Code of Civil Procedure, or section 827 of the Civil Code. (15 Cal.Jur. 640, § 48.) The notice which was given was for immediate possession. It did not contemplate a change of the terms of the lease then in force by increasing the rent from $15 to $25 per month, under section 827 of the Civil Code. The owner did not then have a valid cause of action for unlawful detention and immediate possession of the property. If he desired to evict the lessee for failure to pay the rent, then his notice under section 1161, *supra*, should have been in the alternative, to pay the rent or surrender possession. (*Colyear* v. *Tobriner*, 7 Cal.2d 735, 742 [62 P.2d 741, 109 A.L.R. 191].) In the case last cited, under similar circumstances with respect to the termination of a lease for a specified rental, the Supreme Court held that section 827 of the Civil Code was not applicable, and that section 1161, subdivision 2, of the Code of Civil Procedure required notice to be given in the alternative to pay the rent demanded or surrender possession of the premises. In the present case Mr. Hudson had offered to pay $15 rent for the month of July, which was in accordance with the terms of his agreement.

Moreover, the purchaser of the property wrongfully procured the issuance of the temporary restraining order prohibiting the lessee from removing "the buildings, improvements, fixtures, including tanks buried in the ground." The lease authorized him to remove those fixtures and improvements. Section 1019 of the Civil Code authorizes the removal of trade fixtures during the continuance of the term of the lease.

We are therefore impelled to assume the appellant, I. G. Zumwalt, did not have a valid cause of action for unlawful detention of the property; that there is substantial evidence of a lack of probable cause for instituting the suit, and of the existence of malice.

It may be a complete defense to a suit for malicious prosecution to prove that the defendant made a full and fair statement of all the material facts involved to his attorney, and that he relied upon his advice in commencing the suit complained of, provided it also appears that he was in good faith in so doing. (16 Cal.Jur. 742, § 11.) We are of the opinion the defense of reliance upon the advice of counsel is not available under the circumstances of this case. Mr. Zumwalt was himself an attorney who had previously enjoyed an active practice of the law. He was told by Mr. Hudson on July 6th that he was holding possession of the property from month to month on a definite oral agreement of the former owner to pay rent in the sum of $15 per month after the expiration of the written lease. That important fact was not told to Mr. Zumwalt's attorney. If he doubted the truthfulness of that statement, he could have easily confirmed it by communicating with the former owner, before he went to his lawyer to commence the action. He failed to do so. Moreover, his reply to the statement regarding the amount of rent fixed by the previous owner was "I don't care what your agreement is with Mr. Wickes, or what the law is. . . . I will throw you in court and hold you there until you will be glad to sell." That is some evidence of a lack of good faith in commencing the unlawful detainer action.

It does seem that the amount of the verdict and judgment for malicious prosecution is disproportionate to the damages found to have been incurred by the plaintiff. But that amount is not challenged as excessive. In 16 California Jurisprudence, page 754, section 20, it is said that a verdict in a malicious prosecution action will not be disturbed as excessive unless the amount is so large as to be presumptively the result of passion and prejudice.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied July 14, 1944, and appellants' petition for a hearing by the Supreme Court was denied August 10, 1944. Schauer, J., voted for a hearing.