[Civ. No. 17492.   Second Dist., Div. Three.   Sept. 21, 1950.]

MARTIN CENTERS et al., Appellants, v. DOLLAR MAR-
KETS (a Corporation) et al., Respondents.

Russell H. Pray and Eric A. Rose for Appellants.

Clock, Waestman & Clock and E. W. Sheridan for Respondents.

VALLÉE, J.—Appeal by plaintiffs from a judgment for defendants entered on a directed verdict in an action for damages for malicious prosecution. The claim is that the evidence was such as to require the submission of the cause to the jury.

For a number of years prior to February 21, 1948, Dollar Markets, a corporation, had operated a supermarket in Long Beach. The market was of the self-service type, with two cash registers near the entrance. Plaintiff, a housewife, with her husband and three children, had lived adjacent to the market for three and a half years. She had done substantially all of her shopping for groceries and related items at the market. During that time she had visited the market nearly every day and had known its employees, Mr. Mead, the manager, and Mr. Main, the cashier. Mr. Mead had given her credit when a check from her husband, who was overseas, was delayed. She had frequently cashed checks for $55.20 which came to her husband for disability received in World War II. In each instance the check was O.K.'d by the manager and then presented to the cashier for payment.

On February 21, 1948, plaintiff went to the market to buy two cans of milk. She entered the rear of the store, could not find the brand of milk she was seeking, asked the manager, defendant Mead, when he expected a shipment of a particular brand, and ordered a carton. She took two cans of milk, went to the cashier, defendant Main, waited in line and paid for the milk. Main and a young boy, a stacker, were at the register. She then returned home.

About 10 or 15 minutes later Mead called on her at her home and asked her if she had told Main "that Mr. Mead held a check of mine and Mr. Main was supposed to have paid me $66.40. Q. And what did you tell him? A. I told him no, I had not." Mead left. About 15 minutes later Mead and Main called on plaintiff. Mead asked Main if plaintiff "was the one he had given the money to and he said yes. Q. Did he say how much? A. $66.00. Q. $66.00 or $66.40? A. $66.40. Q. What else was said during the conversation? A. I told him he hadn't given it to me. Mr. Main said he had; He said he would be short $66.40 when he checked the cash register that night. . . . Q. Did he then say anything about any other monies? A. Oh, yes, I was twenty-five short last Saturday and I think you got that too. . . . Q. What was said after that? A. I denied I had gotten it, and they claimed I had, so

then Mr. Mead stated there wouldn't be anything more said about it, they would check further.'' Plaintiff did not talk to either of them again.

Main testified he was the cashier on February 21, 1948; he had known plaintiff as a regular customer for some time; she was in the store on the average of once a day; he accepted about 20 checks on the morning of February 21. In cashing a check he looked at it ''for the O.K., placed it on the cash register where the currency is placed, handed the money, turned the check over, stamped with the bank stamp, put it underneath the register.''. On February 14, plaintiff ''came through the check line I am sure and whether she bought anything or not I am not sure, and she asked Dow [Mead] to O.K. a check on the bank for $25.00—she asked me for the $25.00 and Dow had the check in the back, O.K., and would bring it up in a few minutes and I handed her the money and she said, 'Thank you,' and left and I went on checking. . . . and I never thought another word about it. I forgot it.'' Plaintiff had not asked him for money like that before. He told Mead about it on the 21st. On the 21st ''I asked her [plaintiff] if there was anything that I could do for her and she said, 'I'd like to get these two cans of milk and $66.40.' I says, 'For what?' She says, 'Dow has my check in the back room, and has okayed it and will bring it up in a few minutes.' . . . I says, 'All right,' so I hands her $66.40 and she thanks me''; he asked Mead for the check in a minute or two; he told the details of these occurrences to Mead, Dyer, general manager of Dollar Markets, and Inspector Carroll of the Long Beach Police Department.

James Lynch testified that on February 21st he was employed by Dollar Markets as ''sack boy,'' working alongside Main. Plaintiff came up on the wrong side of the cash register, talked to Main, and he (Main) gave her some money in large bills—fives and tens. He told Mead, Dyer and Inspector Carroll about the incident.

On February 23, 1948, defendant Dyer advised defendant Gillingham, secretary and treasurer of Dollar Markets, of the alleged incident of February 21. Gillingham then checked the manager's report of the store for February 21 to verify the shortage that Dyer had reported to him. The report showed a shortage in both cash registers of $66.61. He then examined the manager's report of February 14. It showed a shortage of about $24.32 in both cash registers. He then questioned Dyer regarding the facts. On February 21 either Mead or

Dyer called the Long Beach Police Department, and Inspector Carroll was sent to the market to make an investigation. Gillingham did not do anything further about the matter until he was asked by Inspector Carroll on February 24 to come to his office. Gillingham, accompanied by Dyer, went to the inspector's office. On the way Gillingham and Dyer discussed the matter. At the inspector's office they met Mead. Gillingham, Dyer and Mead presented the facts to the inspector. In their presence the inspector dictated a report of the transaction from notes he had in his possession and the statements of Dyer and Mead. Main, the cashier, was not present. They then went to the office of Milton Emlein, Deputy City Prosecutor of the city of Long Beach. The inspector first talked to the prosecutor alone. The others were then called in and with the inspector talked to the prosecutor from 15 minutes to half an hour. The prosecutor questioned the inspector regarding facts other than those contained in his report, and questioned Dyer about the facts. Dyer told him he had conducted a thorough investigation and what it had revealed. The prosecutor questioned Mead about the facts. Gillingham then signed the complaint. He did not talk to the prosecutor at all. He testified that at that time he believed plaintiff was guilty.

Mr. Emlein testified that at the conclusion of the questioning he asked the group if they desired a complaint; if so, he would issue it. Someone indicated that they did. Gillingham was selected because of his position with the company. When asked if he advised the issuance of a complaint, Mr. Emlein stated that he approved its issuance. When asked if he told those present there was probable cause, he said he could not recall. He testified that at the time he issued the complaint he was convinced there was probable cause.

Gillingham signed and swore to a complaint that day, charging plaintiff in two counts with theft of $25 from Dollar Markets on February 14, 1948, and $66.40 on February 21, 1948. Plaintiff was arrested the same day, taken to the Long Beach jail, booked, photographed, fingerprinted, and placed in a tank with other prisoners. About half an hour later she was arraigned, pleaded not guilty; the trial was set for March 2, and she was released on her own recognizance. The trial was continued to March 16.

On March 16, 1948, on motion of Mr. Emlein, the complaint was dismissed on the following signed request of Gillingham:

"Gerald Gillingham being the complaining witness therein, states that further investigation of the facts upon which the complaint was issued shows that there was an insufficient basis upon which to press the charges contained in said complaint."

Gillingham testified that Main gave the information he had about the alleged thefts to Mead. Mead gave it to Dyer and Dyer gave it to him (Gillingham). He had no personal knowledge of the case. He made no investigation other than talking to Dyer and sitting in at the meetings with Inspector Carroll and the deputy city prosecutor. He had no actual belief in the matter; it was Dyer's judgment. He did not talk to Main before signing the complaint.

Dyer, Main and Mead each testified that on February 24, 1948, he believed plaintiff was guilty.

In order that plaintiff recover, it was essential she prove three facts: (1) termination of the criminal proceedings in her favor, (2) want of probable cause, and (3) malice on the part of defendants. (*Jaffe* v. *Stone*, 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775]; *Brock* v. *Southern Pacific Co.*, 86 Cal.App.2d 182, 194 [195 P.2d 66]; *Jensen* v. *Leonard*, 82 Cal.App.2d 340, 351 [186 P.2d 206].)

Respondents concede that the evidence establishes that the criminal proceeding was terminated in favor of plaintiff. They also concede that the individual defendants were acting within the scope of their authority as employees of Dollar Markets. The question is whether, considering only the evidence most favorable to plaintiff together with every inference which reasonably can be drawn and every presumption which fairly can be deemed to arise therefrom in her favor, there is any evidence of want of probable cause and of malice.

Probable cause is "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*Lee* v. *Levison*, 173 Cal. 166, 169 [159 P. 438]; *Hudson* v. *Zumwalt*, 64 Cal.App.2d 866, 872 [149 P.2d 457]; *Sebastian* v. *Crowley*, 38 Cal.App.2d 194, 202 [101 P.2d 120].) The burden was on plaintiff to prove that a defendant did not have reasonable grounds for believing that the facts alleged in the complaint were true in order to recover compensatory damages against that defendant. (*Brock* v. *Southern Pacific Co.*, 86 Cal.App.2d 182, 194 [195 P.2d 66]; *Sebastian* v. *Crowley*, 38 Cal.App.2d 194, 203 [101 P.2d 120].)

Probable cause does not depend upon the possession of facts which satisfactorily prove the guilt of an accused

person. It has reference to the common standard of human judgment and conduct. It exists if one is possessed of information or facts which are sufficient to cause a reasonable person to honestly believe the charge is true. (*Jensen* v. *Leonard,* 82 Cal.App.2d 340, 351 [186 P.2d 206] ; *Moore* v. *Durrer,* 127 Cal.App. 759, 765 [16 P.2d 676].) ▉ Proof of the favorable termination of the criminal proceeding does not create a conflict on the issue of probable cause. (*Moore* v. *Durrer,* 127 Cal.App. 759, 765 [16 P.2d 676].) Proof that no crime was committed or that the accused is innocent does not negative the existence of probable cause. (*Haydel* v. *Morton,* 8 Cal. App.2d 730, 733 [48 P.2d 709].)

▉ When the evidence bearing on the question of probable cause is in conflict, it is the province of the jury to determine whether facts exist which will warrant or reject an inference of probable cause. However, if there is no dispute concerning the existence of the facts relied on to show want of probable cause, the trial judge must then determine, as a matter of law, whether such undisputed facts do, or do not, warrant an inference of want of probable cause. If there is no evidence whatever from which the jury might have inferred that the defendants did not in fact believe that a crime had been committed and that plaintiff had committed it, the question of defendants' belief is to be determined by the court on the basis of what, under the circumstances, was sufficient to cause a reasonable man to entertain a suspicion that the crime had been committed and that plaintiff had committed it. (*Franzen* v. *Shenk,* 192 Cal. 572, 578, 581, 582 [221 P. 932] ; *Haydel* v. *Morton,* 8 Cal.App.2d 730, 733 [48 P.2d 709].)

▉ In an action for malicious prosecution, malice means actuated by a wrongful motive, i.e., the party must have had in mind some evil or sinister purpose. (*Pickering* v. *Havens,* 70 Cal.App. 381, 388 [233 P. 346].) Appellant says that malice is ''an absence of an honest and sincere belief by the defendants that the criminal prosecution of plaintiff, Virginia Centers, was justified.'' It does not necessarily infer the presence of anger or vindictiveness. It is sufficient if it appear that the former suit was commenced in bad faith to vex, annoy or wrong the adverse party. (*Hudson* v. *Zumwalt,* 64 Cal. App.2d 866, 872 [149 P.2d 457].) The plaintiff is not required to prove that the prosecutor was inspired by personal hostility, a grudge, or ill will. (*Singleton* v. *Singleton,* 68 Cal.App.2d 681, 696 [157 P.2d 886].) ▉ Malice must be proven

against a particular defendant in order to justify an award of compensatory damages against that defendant. (*Thomson v. Catalina*, 205 Cal. 402, 405 [271 P. 198, 62 A.L.R. 236].) Like any other fact in issue, malice may be proved by direct evidence or may be inferred from all the circumstances in the case. ■ It may, but need not necessarily, be inferred from want of probable cause; but want of probable cause may not be inferred from the most express malice. (*Burke v. Watts*, 188 Cal. 118, 126 [204 P. 578]; *Singleton v. Singleton*, 68 Cal.App.2d 681, 690, 696 [157 P.2d 886]; *Davidson v. De Sousa*, 20 Cal.App.2d 311, 314 [66 P.2d 740].)

■ There is no conflict in the evidence relating to the facts from which the existence or want of probable cause for the prosecution of the criminal charge must be determined as to the defendants Gillingham and Mead. There was no evidence that either of them did not act in good faith and under an honest belief that the crime had been committed and that it had been committed by plaintiff. There were circumstances made known to them sufficiently strong to warrant a reasonable man to believe the charge was true.

■ Appellants argue that because Gillingham testified that when he went to the city prosecutor's office he had formed no actual belief in the matter, and because he did not exhaust all sources of information, he did not in fact believe the truth of the charge. The record is not clear as to just what time counsel was referring when he asked the witness ''You had formed no actual belief in the matter at all, had you?'' and the witness answered, ''No''; but it would appear that it was before the meeting in the city prosecutor's office. The witness testified that he relied on Dyer's judgment; he had complete confidence that Dyer and Mead would tell him all the facts, he believed they told him everything they knew, and at the time he signed the complaint he believed plaintiff was guilty; he based his belief on all the facts that had been gathered and presented from the time Dyer first informed him of the case on February 23, the conversation and reports read in the inspector's office, and the review of the facts presented in the inspector's report to the prosecutor and his (the prosecutor's) recommendation that a complaint be issued. A party is not required to exhaust all sources of information bearing on the facts which have come to his knowledge in order to have probable cause. (*Brock v. Southern Pacific Co.*, 86 Cal.App.2d 182, 199 [195 P.2d 66].)

Appellants also argue that want of probable cause appears

because Gillingham did not, between the time the complaint was signed and the date the proceeding was dismissed, make any further investigation of the case. ■ The knowledge of facts which may justify the alleged malicious prosecution is that which is possessed at the time of its occurrence; not that which is subsequently acquired. (*Hudson* v. *Zumwalt,* 64 Cal.App.2d 866, 872 [149 P.2d 457] ; *Perry* v. *Washington National Ins. Co.,* 14 Cal.App.2d 609, 618 [59 P.2d 158].) The court properly determined, as a matter of law, that the evidence did not establish want of probable cause on the part of the defendants Gillingham and Mead. This conclusion relieves us of the necessity of discussing the question of malice attributed to these defendants.

■ Defendant Main, the cashier, told Mead, and testified, that on February 14 plaintiff obtained $25 and on February 21, $66.40, by false pretenses. Plaintiff, at all times, and in her testimony, denied the statements of Main *in toto* and denied that she received the money. She related the incidents which occurred on her visits to the market in detail. If plaintiff's testimony was true, the jury would have been justified in inferring that Main's statements to Mead were necessarily and knowingly false. (*Robinson* v. *McKnight,* 103 Cal.App. 718, 729 [284 P. 1056].) If Main's statements to Mead were false, there was no theft and hence no probable cause on the part of Main for plaintiff's arrest. The evidence was thus in conflict as to whether there was want of probable cause on the part of Main. If there is evidence with respect to the actual belief of the defendant sufficient to warrant a conclusion that he did not in fact believe the truth of the charge, the question of probable cause to that extent involves a question of fact to be submitted to the jury. (*Sutherland* v. *Palme,* 93 Cal.App.2d 307, 314 [208 P.2d 1035] ; *Gooding* v. *McAlister,* 114 Cal.App. 284, 292 [299 P. 774].) There was evidence sufficient to support the conclusion that Main did not in fact suspect plaintiff of guilt and that he was actuated by sinister motives.

■ Malice on the part of Main may be inferred from want of probable cause. It may be shown by proof of lack of good faith on the part of an accuser. (*Baker* v. *Gawthorne,* 82 Cal.App.2d 496, 500 [186 P.2d 981].) ■ If a defendant did not himself believe in the guilt of the accused, then the circumstances relied on will not shield him. (*Franzen* v. *Shenk,* 192 Cal. 572, 579 [221 P. 932].) He must have believed

that his charge was true.   ▆▆▆   There was other evidence of malice on the part of Main. On several occasions after the arrest of plaintiff, Main asked her 12-year-old boy why his mother did not come and do some more shoplifting. Gillingham testified that at the times involved Dollar Markets had a rule prohibiting the cashier from cashing checks unless O.K.'d by someone in authority; that the transactions of February 14 and 21, as told to him, were highly irregular and in violation of the rules; and that Main had no authority to give money from the cash register without depositing a check or other evidence of payment in the register. The evidence was sufficient to warrant the inference that Main was actuated by malice.

▆▆▆   As we have said, respondents concede that Main was the agent of the corporate defendant and that his activities were within the scope of his authority in acting for and on behalf of the corporation. The corporate defendant is liable for the acts of its agents acting within the scope of their authority. (*Pierre* v. *Great Atlantic etc. Tea Co.*, 4 Cal.App.2d 468, 471 [40 P.2d 909] ; *Diggs* v. *Arnold Bros., Inc.*, 132 Cal. App. 518, 524 [23 P.2d 71].) Main did not sign the complaint. However, he put in motion the forces which resulted in the charge. He related his story to Mead and to the inspector. He assisted, participated in, and cooperated in causing the prosecution.   ▆▆▆   One may be civilly liable for malicious prosecution without personally signing the complaint initiating the criminal proceeding. If a person, without probable cause and with malice, instigates or procures the prosecution, he is liable. The rule is stated in *Blancett* v. *Burr*, 100 Cal.App. 61, 62 [279 P. 668] : ''The general rule appears to be that 'one who procures a third person to instigate a malicious prosecution is liable in damages to the party injured to the same extent as if he had instituted the proceeding himself . . . and that it is not necessary that the complaint or information on which the prosecution is based should have been signed by the person sought to be held liable in order to establish his liability in an action for malicious prosecution. It is enough if he was instrumental in setting the law in motion and caused the prosecution to proceed.' (Ann.Cas. 1918A, pp. 485, 486, where authorities, including *Kinsey* v. *Wallace,* 36 Cal. 462, 480, are cited.) To practically the same effect is the declaration of the law in 38 Corpus Juris, 395, where reference is also had to many authorities, and wherein it is stated that the test of liability in an action for malicious prosecution is whether the defendant

was actively instrumental or was the proximate and efficient cause of maliciously putting the law in motion. A case which is nearly parallel in its facts with the instant case is that of *Holden* v. *Merritt*, 92 Iowa, 707 [61 N.W. 390]. Therein it appears that the defendant furnished an inspector of the United States government with facts on which the inspector filed an information on which the plaintiff was arrested. The defendant insisted that there was no evidence that he had instigated or procured the prosecution. With reference thereto, in part, the court said: '. . . It need not be shown that the defendant ordered or directed the warrant or process to issue, or that he participated in its execution. If he, on his own motion, gave information or made complaint to the officers of the law in such a manner as that, in the regular and ordinary course of events, an arrest must be made, or will probably follow, this is sufficient to warrant the jury in finding him the real prosecutor. (Citing authorities.)' ''

Defendants assert that the defense of advice of counsel was established by uncontroverted evidence. There is no evidence that Main was advised by counsel. The evidence did not establish that Dollar Markets acted, through its officer Gillingham, on the advice of counsel. Advice of counsel can only be established by proving the facts that were stated by a defendant to counsel. (*Singleton* v. *Singleton*, 68 Cal.App.2d 681, 695 [157 P.2d 886].) Dollar Markets did not prove the facts that were stated to the prosecutor. The evidence was that the report of Inspector Carroll and other facts—the nature of which was not disclosed—were presented to the prosecutor. One cannot say from the record what facts were stated to him. Whether a full and fair disclosure of all the facts was made to Mr. Emlein was a question of fact to be determined by the jury. (*Miller* v. *Lee*, 66 Cal.App.2d 778, 784 [153 P.2d 190].) And whether Mr. Emlein gave any advice was a question of fact for the jury. Further, advice of counsel is not a defense to an action for malicious prosecution if it appears that the defendant did not believe the accused was guilty. (*Franzen* v. *Shenk*, 192 Cal. 572, 580 [221 P. 932].) As we have said, the jury could have concluded that Main did not believe plaintiff was guilty; and Dollar Markets is liable for the acts of Main, unless it can establish that it acted on the advice of counsel.

One of the defendants named in the complaint was Thomas

I. Lingo. Appellant does not point to any evidence connecting this defendant with the prosecution of plaintiff, and we have found none.

The judgment in favor of defendants Gillingham, Mead and Lingo is affirmed. The judgment in favor of defendants Main and Dollar Markets, a corporation, is reversed.

Shinn, P. J., and Wood (Parker), J., concurred.