[Civ. No. 44033. First Dist., Div. One. Jan. 17, 1980.]

JOSEPH MATOSSIAN et al., Plaintiffs and Appellants, v.
JOSEPH FAHMIE et al., Defendants and Respondents.

COUNSEL

H. Tim Hoffman, Gregory Wilcox and Arthur W. Lazear for Plaintiffs and Appellants.

Bronson, Bronson & McKinnon, Paul H. Cyril, Joseph B. Phair, Moore, Clifford, Wolfe, Larson & Trutner, J. Jay Schnack, Barfield, Barfield, Dryden & Ruane, Mattathias N. Smith, Ericksen, Mackenroth & Arbuthnot, R. Opre Wilson, Jr., and Robert G. Levy for Defendants and Respondents.

OPINION

**ELKINGTON,** The question of this appeal is whether holders of licenses to purvey alcoholic beverages have a right, in combination, to protest the granting, or transfer, of a similar license *for the sole purpose of preventing or limiting competition.* We conclude they have such a right of protest and affirm the judgment of the superior court. Our reasons follow.

California's Constitution, article XX, section 22, provides that such purveyors of alcoholic beverages shall be licensed by the Department of Alcoholic Beverage Control (Department). Such a license will be allowed only when not contrary to the *"public welfare or morals,..."* (Italics added.) Any person aggrieved by action of the Department is given a right of appeal to the Alcoholic Beverage Control Appeals Board (Appeals Board). And the state's Legislature is authorized to implement the constitutional provisions to the end that the public welfare and morals be served.

Pursuant to its constitutional authority the Legislature has provided that an application for, or transfer of, a license shall be granted by the Department only if, *after "a thorough investigation"* (italics added), it is found to be consistent with the public welfare and morals. And it has ordained that the constitutional criteria are not ordinarily served if the license's issuance "would tend to create a law enforcement problem, or if issuance would result in or add to an *undue concentration of licenses* and the applicant fails to show that public convenience or necessity would be served by such issuance." (Bus. & Prof. Code, § 23958; italics added.)

In the course of its legislatively directed thorough investigation the Department requires "public notice" of the application to interested persons whose views whether it comports with the public welfare and morals, are invited by way of timely written "protests." (Bus. & Prof. Code, §§ 23985, 23986.) Any interested person has a *right* to express his views by filing such a protest (Bus. & Prof. Code, § 24013), and a *right* to a hearing thereon (Bus. & Prof. Code, §§ 24015, 24300).

Further implementation of the constitutional and statutory directions appears in printed "Instructions for preparing and filing protests" which are widely disseminated by the Department. They provide that protests shall set forth specific objections such as: *"Issuance of the license to the premises would result in or add to undue concentration of licenses"* (italics added; and see Bus. & Prof. Code, § 23958), or "would interfere with the quiet enjoyment of their property by the residents of the area," or with the "respective functions" of a nearby "school, church, hospital or children's public playground...."

The plaintiffs Matossian were proprietors of a delicatessen in the City of Berkeley located just beyond the area within "one mile" from

the grounds "belonging to the University of California," in which the sale of alcoholic beverages was forbidden by Penal Code section 172. They, the several defendants, and many others in the neighborhood, held licenses permitting sale and consumption of beer and wine on their business premises. Having moved to larger adjacent premises where they "planned to serve light foods and beer and wine," plaintiffs applied to the Department for a transfer of their license. Upon posting of the required notice 15 interested persons responded with protests.

The several nonparty protestants gave varying reasons.*

For some reason, or perhaps no reason, we are not furnished by plaintiffs with a record of defendants' protests; but the briefs make clear that they at least included complaints that granting the license transfer "would result in or add to undue concentration of licenses." We accordingly treat plaintiffs' appeal as though defendants' protests were grounded on that reason alone.

The Department held a hearing, considered the protests, and then granted plaintiffs' application. Upon denial of a request for reconsideration the defendants appealed to the Appeals Board. The other protestants did not so appeal. The Appeals Board affirmed the ruling of the Department.

Thereafter plaintiffs filed the instant action for damages against defendants by which they sought $600,000 and costs. The complaint was in three counts, sounding in (1) "malicious prosecution" and "tortious interference with a business," (2) "abuse of process," and (3) "conspiracy to prevent competition." As to each of them, disregarding conclusionary allegations (see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 272, pp. 1944-1946), the gist of the complaint was that defendants conspired to, and did, file "meritless protests" for the single purpose to "destroy...competition and thereby to gain a business ad-

---

*Some of them follow: "to add the possibility of a 'wine garden' (or whatever) to the already-over-abundant liquor stores in the area would constitute a significant liability in the neighborhood"; "I wish to object to any enlargement of facilities...that would allow for increased serving of wine by the glass and beer in this neighborhood." It "is becoming an increasing problem...especially among the youth"; "liquor stores are in excess"; "It is not only near the residential area but there is a school, church and playground nearby"; "We object to any further licenses....The businesses holding such a license in this area...are most sufficient"; "A bar and restaurant at this location would create a disturbance to the quiet and comfortable residential area."

vantage for themselves," thus causing plaintiffs "to be without a license to carry on their [alcoholic beverage] business for ten (10) months."

For the purpose of clarifying the issues the several defendants in the superior court, and now here, concede, arguendo, "the existence of a conspiratorial motive to prohibit excessive competition."

Defendants' general demurrers to the malicious prosecution and tortious interference with a business, and abuse of process, counts of the complaint were sustained without leave to amend. And thereafter, on defendants' motion, an order granting summary judgment on the remaining conspiracy to prevent competition count was entered. It is from the ensuing judgment of dismissal of their action that plaintiffs have appealed.

We find the following principles generally apposite to the appeal.

■ In determining constitutional issues such as impairment of the First Amendment right of petition, and where as here the facts are without substantial controversy, the question "is one of law [for the reviewing court] and not of fact,..." (*L. A. Teachers Union* v. *L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827].)

■ The right of petition to governmental agencies, like freedom of speech, of the press, and of religion, has "a paramount and preferred place in our democratic system." (*American Civil Liberties Union* v. *Board of Education* (1961) 55 Cal.2d 167, 178 [10 Cal.Rptr. 647, 359 P.2d 45, 94 A.L.R.2d 1259] [cert. den., 368 U.S. 819 (7 L.Ed.2d 25, 82 S.Ct. 34)].) "All these, though not identical, are inseparable." (*Thomas* v. *Collins* (1945) 323 U.S. 516, 530 [89 L.Ed. 430, 440, 65 S.Ct. 315].) "Congress shall make no law...abridging...the right of the people...to petition the Government for a redress of grievances." (U. S. Const., 1st Amend.) "The people have the right to...petition government for redress of grievances,..." (Cal. Const., art. I, § 3.)

■ "'The very idea of a government...implies a right on the part of its citizens...to petition for a redress of grievances.'" (*De Jonge* v. *Oregon* (1937) 299 U.S. 353, 364 [81 L.Ed. 278, 284, 57 S.Ct. 255].) "[A]ny attempt to restrict those liberties must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and

present danger. The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. These rights rest on firmer foundation.... Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation.... It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble *and to petition for redress of grievances.*" (*Thomas* v. *Collins, supra*, 323 U.S. 516, 530 [89 L.Ed. 430, 440]; italics added, fn. omitted; *American Civil Liberties Union* v. *Board of Education, supra*, 55 Cal.2d 167, 179.) ■ And as said in *In re Allen* (1969) 71 Cal.2d 388, 391 [78 Cal.Rptr. 207, 455 P.2d 143]: "The government is without constitutional authority to impose a predetermined condition on the exercise of a constitutional right or penalize in some manner its use."

■ The right to petition for redress of grievances is not confined to "religious or political" matters. (*Thomas* v. *Collins, supra*, 323 U.S. 516, 531 [89 L.Ed. 430, 441].) "[C]ommercial speech, like other varieties, is protected" by the First Amendment. (*Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 770 [48 L.Ed.2d 346, 363, 96 S.Ct. 1817].) "[I]t would be destructive of rights of association and of petition to hold that groups with common interests may not... use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting *resolution of their business and economic interests vis-à-vis their competitors.*" (*California Transport* v. *Trucking Unlimited* (1972) 404 U.S. 508, 510-511 [30 L.Ed.2d 642, 646, 92 S.Ct. 609]; italics added.)

Where administrative agencies such as the Department must make factual determinations "'the widest possible dissemination of information from *diverse and antagonistic sources* is essential to the welfare of the public,...'" (*Weaver* v. *Jordan* (1966) 64 Cal.2d 235, 245 [49 Cal.Rptr. 537, 411 P.2d 289] [cert. den., 385 U.S. 844 (17 L.Ed.2d 75, 87 S.Ct. 49)]; italics added.)

■ Nor does the right of the people to petition government depend upon "motivation" or "purpose." It is what is done that is significant. (See *Mine Workers* v. *Pennington* (1965) 381 U.S. 657, 670 [14 L.Ed.2d 626, 636, 85 S.Ct. 1585]; *Weiss* v. *Willow Tree Civic Ass'n* (S.D.N.Y. 1979) 467 F.Supp. 803, 817; *Sierra Club* v. *Butz* (N.D.Cal.

1972) 349 F.Supp. 934, 938.) "[T]he motive, even if malicious, of defendants is unimportant if legal ground existed upon which to predicate" their protests and appeal. (*Paskle* v. *Williams* (1931) 214 Cal. 482, 487 [6 P.2d 505].) And patently the right of petition or protest to a governmental agency does not depend upon a successful outcome.

■ In furtherance of these principles it is held that: "The right to have one's voice heard and one's views considered by the appropriate governmental authority" (*Williams* v. *Rhodes* (1968) 393 U.S. 23, 41 [21 L.Ed.2d 24, 37, 89 S.Ct. 5], Harlan, J., conc.) may not be conditioned by a state upon "the exaction of a price" (*Garrity* v. *New Jersey* (1967) 385 U.S. 493, 500 [17 L.Ed.2d 562, 567, 87 S.Ct. 616]), or "punishment" (*Thornhill* v. *Alabama* (1940) 310 U.S. 88, 101-102 [84 L.Ed. 1093, 1102, 60 S.Ct. 736]), or "threat of criminal or civil sanctions" (*Nebraska Press Assn.* v. *Stuart* (1976) 427 U.S. 539, 559 [49 L.Ed.2d 683, 698, 96 S.Ct. 2791]). For such is the "policy of protecting the First Amendment against possible chilling influences." (*Garvin* v. *Rosenau* (6th Cir. 1972) 455 F.2d 233, 239; and see *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 631 [22 L.Ed.2d 600, 613, 89 S.Ct. 1322]; *United States* v. *Jackson* (1968) 390 U.S. 570, 582 [20 L.Ed.2d 138, 147, 88 S.Ct. 1209].)

"It is generally agreed that the liquor industry is one which greatly affects the public health, safety, welfare and morals of the people....Each applicant for a license...must subject himself and the premises where the business will be conducted to a thorough investigation." (*Duke Molner etc. Liquor Co.* v. *Martin* (1960) 180 Cal.App.2d 873, 880-881 [4 Cal.Rptr. 904] [cert. den., 364 U.S. 870 (5 L.Ed.2d 92, 81 S.Ct. 112)]; and see authority there collected.)

■ We are persuaded by the foregoing authority and considerations that where, as here, a statute expressly invites or allows interested persons to protest, or give their views or opinions concerning, proposed or requested governmental administrative action, such persons singly or in combination have a *lawful right* to do so; in such a case the law will not permit judicial or other inquiry into the persons' purpose or motivation. As said in *Paskle* v. *Williams, supra,* 214 Cal. 482, 487, "the motive, even if malicious, of defendants is unimportant if legal ground existed upon which to predicate" their protests. Such a right may not be defeated, or abridged, or "chilled," by threat or fear of civil action for exercising it.

██ We accordingly perceive no error in the order sustaining defendants' demurrer to the complaint's malicious prosecution and tortious interference with a business count.

Adverting now to the abuse of process count of the complaint, we observe that the subject process consisted of defendants' unsuccessful protests and their subsequent appeal to the Appeals Board. As was noted in respect of the malicious prosecution and interference with a business count, here also defendants had a constitutional and statutory right to take the proceedings instituted by the questioned process.

The defendants' demurrer to the abuse of process count was properly sustained.

As noted, the judgment as to the remaining count of the complaint was summary. That count was based on the theory of defendants' violation of the state's Cartwright Act (Bus. & Prof. Code, §§ 16700-16758) which proscribes "Combinations in Restraint of Trade." ██ The act generally is patterned after the federal Sherman Anti-Trust Act (15 U.S.C. § 1 et seq.), "and *decisions under the latter act are applicable to the former.*" (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953]; italics added.)

The dispositive authority of the issue before us, we opine, is *Eastern R. Conf.* v. *Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523] (hereafter *Noerr*).

██ In a not dissimilar context *Noerr* instructs in the following manner: "We accept, as the starting point for our consideration of the case, the same basic construction of the Sherman Act adopted by the courts below—that no violation of the Act can be predicated upon mere attempts to influence the passage *or enforcement* of laws." (365 U.S., p. 135 [5 L.Ed.2d, p. 470]; italics added.)

"*. . . The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so.* It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors. . . . Indeed, it is quite probably people

with just such a hope of personal advantage who provide much of the information upon which governments must act. A construction of the Sherman Act that would disqualify people from taking a public position on matters in which they are financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them. *We reject such a construction of the Act and hold that, at least insofar as the railroads' campaign was directed toward obtaining governmental action, its legality was not at all affected by any anticompetitive purpose it may have had.*" (*Id.*, pp. 139-140 [5 L.Ed.2d p. 472]; italics added.)

The same principle was emphasized by the nation's high court in *Mine Workers* v. *Pennington, supra*, 381 U.S. 657, 670 [14 L.Ed.2d 626, 636]: "*Noerr* shields from the Sherman Act a concerted effort to influence public officials *regardless of intent or purpose.* . . . [¶] . . . *Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal,* either standing alone or as part of a broader scheme itself violative of the Sherman Act." (Italics added.)

There is, to be sure, an exception to the rule. It will exist when the defendants have in some manner *barred* their "competitors from meaningful access to adjudicatory tribunals and so to usurp that decisionmaking process," or otherwise consisted of a "combination of entrepreneurs to harass and deter their competitors from having 'free and unlimited access' to the agencies and courts, . . ." (*California Transport* v. *Trucking Unlimited, supra*, 404 U.S. 508, 512, 515 [30 L.Ed.2d 642, 647, 649].)

In the case at bench we discern neither allegations, nor proof, nor offer of proof, that defendants or any of them had directly, or indirectly, intended or attempted or conspired to bar plaintiffs from "'free and unlimited access' to the agencies and courts, . . ." Their protests against the transfer of plaintiffs' license, even though motivated by selfish commercial or competitive reasons, were constitutionally protected in relation to the Cartwright Act, also.

The order granting summary judgment as to the instant count was properly entered.

Plaintiffs' argument that "summary judgment should not be granted to defendants where plaintiff[s have] not been allowed a reasonable time for discovery" is found to be here inapposite. No record reference is made to any request that the summary judgment proceedings be deferred pending such discovery. (See rule 15(a), Cal. Rules of Court.) And we ourselves find no such request.

No abuse of discretion is seen in the superior court's sustaining of defendants' demurrer *without leave to amend*. Plaintiffs made no showing or argument in the superior court and make none here how, or in what manner, the complaint's subject counts could have been successfully amended to state causes of action. Nor does the record reasonably indicate that such could be done. (See *Routh v. Quinn* (1942) 20 Cal.2d 488, 493-494 [127 P.2d 1, 149 A.L.R. 215]; *First Western Bank & Trust Co. v. Bookasta* (1968) 267 Cal.App.2d 910, 913 [73 Cal.Rptr. 657].)

It is regrettable that the proceedings at hand, as with such proceedings and lawsuits generally, were timetaking and undoubtedly costly to all parties. But such considerations are inherent in our form of government with its constitutional rights and protections, a form which few would wish to change.

The judgment is affirmed.

Racanelli, P. J., and Grodin, J., concurred.